BONNIE J. THOMPSON AND KENNETH D. THOMPSON, APPELLANTS, *v.* THE CITY OF NORTH LAS VEGAS, A MUNICIPAL CORPORATION, RESPONDENT.

No. 22780

July 6, 1992                       833 P.2d 1132

---

*John M. Sacco,* Las Vegas, for Appellant.

*Richard Maurer,* City Attorney, *Mark L. Zaloras,* Deputy City Attorney, North Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

## THE FACTS

Appellants Bonnie and Kenneth Thompson own and reside on real property located at 3737 Verde Way in North Las Vegas, Nevada. A piece of this real property (the "parcel"), approximately one-fifth of an acre in size, is the subject of this dispute. For over fifteen years the appellants have stored equipment and vehicles on the parcel, and they have paid taxes on it since 1973.

In the fall of 1988, the City of Las Vegas, in accordance with a city council resolution, commenced an action (the "Decatur Realignment") under NRS Chapter 270 to correct the plat representing four sections of land in Clark County, Nevada. Appellants' Verde Way real property lies within one of these sections;

consequently, appellants were among the five hundred defendants named in the complaint filed by Las Vegas. The City of North Las Vegas, respondent here, was not a party to the Decatur Realignment.

NRS Chapter 270 sets forth a detailed procedure for correcting faulty maps or plats. In accordance with this procedure, Las Vegas placed on public display its proposed plat for the four sections of land, published notice of the proposed plat in the Las Vegas Review-Journal, and held a public hearing for the purpose of receiving objections to the proposed plat. In addition, VTN-Nevada, an engineering firm retained by Las Vegas to create the proposed plat, contacted all affected property owners and invited them to meet to discuss the accuracy of the proposed plat. At the conclusion of each of these meetings, each property owner who found the proposed plat to be accurate signed a stipulation memorializing her agreement with the proposed plat. Each of these stipulations provided in relevant part that "this Defendant joins in the prayer of said Complaint that the Court issue an order adopting, fixing and establishing the correct map and boundary line of the area in dispute in accordance with [the proposed plat]." Each of the appellants signed a stipulation.

Appellants acknowledge having been served with photocopies of the Decatur Realignment complaint and proposed plat in May of 1989. According to appellants, however, the poor quality of the photocopies impelled them to contact VTN-Nevada and inquire about the proposed plat and its effect on the boundary line of appellants' Verde Way real property. Appellants also aver that after they provided the VTN-Nevada representative with their lot number, they were informed that the boundary line change would be slight: approximately six inches to one foot. Finally, appellants contend that in reliance on these statements, they signed their stipulations.

By the time set for trial in the Decatur Realignment matter, all but seventeen defendants had either stipulated to the accuracy of the proposed plat or defaulted. The case was tried before the district court from September 5, 1989, through September 8, 1989. After hearing testimony and viewing exhibits, the district court issued findings of fact, conclusions of law, and order for entry of judgment and decree (the "Decatur Realignment Judgment"). Pursuant to the Decatur Realignment Judgment, respondent was awarded title to the parcel. Appellants did not appeal from the Decatur Realignment Judgment.

At some point after they signed their stipulations in the Decatur Realignment matter, appellants applied to respondent for a building permit to construct a fence around the parcel but were refused. Appellants assert that they telephoned respondent,

inquired about ownership of the parcel, and received assurances from one of respondent's employees that they still owned the parcel. Appellants further contend that only later did they learn that respondent had been awarded title to the parcel, and that by then, the time in which to appeal or move to set aside the Decatur Realignment Judgment had expired.

On June 5, 1991, appellants filed a complaint against respondent. In this complaint, appellants sought, among other things, to quiet title to the parcel in their favor. On September 13, 1991, respondent filed a motion to dismiss pursuant to NRCP 12(b)(5). Respondent sought dismissal of appellants' complaint "based on res judicata and the doctrines of stare decisis and unclean hands." Following oral argument, the district court granted respondent's motion and entered an order of dismissal pursuant to NRCP 12(b)(5).

## DISCUSSION

At the outset, appellants contend that the district court committed reversible error by failing to treat respondent's motion to dismiss as a NRCP 56 motion for summary judgment. While we believe that the court did commit error, we also conclude that this error does not warrant a reversal.

Where materials outside of the pleadings are presented to and considered by the district court, it can be said that the district court, in effect, treated and disposed of a motion to dismiss as a Rule 56 motion for summary judgment. MacDonald v. Kassel, 97 Nev. 305, 629 P.2d 1200 (1981). Here, in conjunction with their pleadings, the parties submitted affidavits and other materials, including a copy of the Decatur Realignment Judgment and copies of each appellant's stipulation in that case. And while the dismissal order is devoid of the rationale for granting respondent's motion to dismiss, it does contain language showing that the district court considered these materials:

> Upon hearing oral argument, and after consideration of the Memoranda of Points and Authorities filed both in support of and in opposition to the Motion [to dismiss], and based on the pleadings, *papers and all of the records on file in this action*, . . . .

Thus, though the district court titled his decision an order of dismissal, the district court, in effect, rendered summary judgment.

Apparently, then, the district court erred in failing to expressly consider respondent's motion as one for summary judgment. Even if so, however, we are not obliged to reverse; rather, we shall simply review the dismissal order as if it were a summary

judgment. *See* Paso Builders, Inc. v. Hebard, 83 Nev. 165, 169, 426 P.2d 731, 734 (1967).

Accordingly, in reviewing the dismissal order, we accept appellants' allegations as true, and should affirm the dismissal order only if, as a matter of law, respondent has established that there is no genuine issue of material fact. *See* NRCP 56(c); Tahoe Village Homeowners v. Douglas Co., 106 Nev. 660, 661, 799 P.2d 556, 557 (1990).

Respondent first argues that summary judgment is warranted because appellants waived any errors in the Decatur Realignment by (1) executing their respective stipulations; (2) neglecting to participate in the Decatur Realignment trial; (3) failing to move, under NRCP 59, either for a new trial or to alter or amend the Decatur Realignment Judgment; (4) failing to seek relief from the Decatur Realignment Judgment under NRCP 60; and (5) failing to appeal the Decatur Realignment Judgment. In our view, this argument plainly lacks merit.

A waiver is the intentional relinquishment of a known right. In order to be effective, a waiver must occur with full knowledge of all material facts. Friendly Irishman v. Ronnow, 74 Nev. 316, 319, 330 P.2d 497, 499 (1958). As appellants correctly assert, a party cannot waive something unknown to her. Santino v. Glens Falls Ins. Co., 54 Nev. 127, 139, 9 P.2d 1000, 1004 (1932). Here, appellants, in their affidavits, aver that prior to executing their stipulations, they were told by a representative of VTN-Nevada that the boundary line change for their property would be "minimal and only six inches to one foot." Appellants further avow that they would not have executed the stipulations had they known that they would lose title to the parcel, and that only later, after the time in which to appeal or move to set aside the Decatur Realignment Judgment had expired, did they learn that respondent had been awarded the parcel. Because we believe there exist genuine issues of material fact regarding appellants' knowledge at the time they executed the stipulations and the point at which appellants learned of respondent's ownership of the parcel, we cannot conclude as a matter of law that appellants waived any errors in the Decatur Realignment Judgment. Accordingly, summary judgment cannot be granted to respondent on the basis of waiver.

Respondent next argues that summary judgment is warranted because, under the doctrine of collateral estoppel, the Decatur Realignment Judgment precludes this action. We disagree.

The doctrine of collateral estoppel is based upon the sound public policy of limiting litigation by preventing a party who had

one full and fair opportunity to litigate an issue from again drawing it into controversy. Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 122 P.2d 892, 894 (Cal. 1942). Again accepting as true the allegations contained in appellants' affidavits, appellants, as a matter of law, simply did not have a full and fair opportunity to litigate the ownership of the parcel in the Decatur Realignment adjudication. In fact, in reliance upon the misrepresentations of the VTN-Nevada employee, appellants signed their stipulations, thereby foregoing litigation altogether. Thus, we conclude that collateral estoppel does not bar appellants' action, and therefore summary judgment cannot be sustained on the basis of this doctrine.

For the reasons set forth above, we reverse the order of the district court dismissing appellant's complaint and remand this case to the district court for further proceedings not inconsistent with this opinion.[1]

---

[1]The Honorable Thomas L. Steffen, Justice, voluntarily recused himself from participation in the decision of this appeal.