Michele GARCIA, individually and on behalf of Gisele Reyes, Jordan Reyes, and Benjamin Hunter, Jr., infants, Plaintiffs,

v.

Nicholas SCOPPETTA, individually and as Commissioner; William Bell, individually and as Commissioner; Anthony Akinduro, individually and as caseworker; Gary Brauman, individually and as supervisor; Bonnie Lowell, individually and as manager; John Doe, individually and as supervisor; Raymond Montana, individually and: as supervisor; and the City of New York, Defendants.

No. 03–CV–1956 (JBW).

United States District Court, E.D. New York.

Nov. 6, 2003.

Lansner & Kubitschek by Carolyn A. Kubitschek, Esq., New York City, for Petitioner Michele Garcia.

Michael A. Cardozo, Corporation Counsel of the City of New York by Michael DiChiara, Esq., New York City, for Respondents Nicholas Scoppetta et al.

WEINSTEIN, Senior District Judge.

## I. Introduction

Michele Garcia ("plaintiff") is a member of Subclass A in *Nicholson v. Williams*, 203 F.Supp.2d 153 (E.D.N.Y.2002). Her case was cited by this court, *id.* at 182–85, in its opinion granting a preliminary injunction to ensure that: "1) battered mothers who are fit to retain custody of their children do not face prosecution or removal of their children solely because the mothers are battered, and 2) the child's right to live with such a mother is protected." *Id.* at 157. An appeal is currently before the Court of Appeals for the Second Circuit, which has certified questions of state law to the New York Court of Appeals. *See Nicholson v. Scoppetta*, 344 F.3d 154, 176–77 (2d Cir.2003).

Plaintiff brings this action, pursuant to 42 U.S.C. § 1983, against officials and employees of the Administration for Children's Services ("ACS") and the City of New York ("the City") (collectively "defendants") asserting constitutional violations arising out of the alleged filing of child protective proceedings against her maliciously and without probable cause. Defendants have moved to dismiss the entire complaint on the ground of *res judicata*, or in the alternative, moved for dismissal as to the individual defendants on the basis of qualified immunity. No other basis for dismissal is before this court.

This court holds that: (1) plaintiff's claim for malicious prosecution is not pre-

cluded by her previous suit for the unconstitutional removal of her children; (2) the individual defendants, all officials and employees of ACS, are entitled to qualified immunity; and (3) neither of these decisions will be certified for interlocutory appeal to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b).

## II. Facts

Plaintiff is the mother of Gisele Reyes, Jorden Reyes, and Benjamin Hunter, Jr. On July 6, 1999, Benjamin Hunter, Sr., the father of Benjamin, came to plaintiff's home and assaulted her. Plaintiff sustained severe injuries and was hospitalized for some eleven days. The individual defendants, who are all officials or employees of ACS, began an investigation to determine whether plaintiff's children had been neglected.

On August 27, 1999, ACS commenced neglect proceedings against plaintiff in Family Court. That same day, the Family Court authorized ACS to remove plaintiff's children and place them in foster care. Plaintiff did not regain custody of her children until November 12, 1999, when ACS released them pursuant to an order of the Family Court.

ACS continued to prosecute plaintiff. In June 2000, after a hearing, the Family Court entered a finding of neglect against plaintiff. Plaintiff moved to vacate the Family Court's finding. The motion was denied in January 2002. Plaintiff filed a notice of appeal in February 2002. Oral arguments were heard in June.

In August 2002, plaintiff filed suit in federal court against ACS and the City of New York seeking damages for the allegedly unconstitutional removal of her children (*"Garcia I"*). *See* Complaint, *Reyes v. Scoppetta,* (No. 02–4358)(E.D.N.Y. Aug. 5, 2002).

On February 25, 2003, while *Garcia I* was being litigated, the Appellate Division reversed the finding of neglect against plaintiff and ordered that all charges against her be dismissed. *See Matter of H./R. Children,* 302 A.D.2d 288, 756 N.Y.S.2d 166 (1st Dept.2003) (finding the record was bereft of any evidence of a history of domestic violence by Mr. Hunter against plaintiff).

On March 5, 2003 plaintiff served a Notice of Claim on the City of New York indicating that she intended to file a second action against defendants for allegedly initiating child protective proceedings against her maliciously and without probable cause.

On April 3, 2003, defendants in *Garcia I* made an offer of judgment pursuant to Federal Rule of Civil Procedure 68. The Rule 68 proffer stated that it was an offer to plaintiff "to take judgment against them [defendants] in this action in the amount of . . . $100,001.00, plus costs and reasonable attorneys' fees accrued to date." It further stated that it was "not to be construed as an admission either that any of the defendants are liable in this action, or that plaintiffs have suffered any damage."

Plaintiff accepted the offer on April 16, 2003. The offer was endorsed by this court on April 20, and the case was ordered to be closed. The judgment was not entered by the clerk of the court until July 9, 2003.

After acceptance of the Rule 68 offer, but before judgment was entered, plaintiff filed the instant action (*"Garcia II"*) on April 23, 2003. She seeks damages from officials and employees of ACS and the City of New York for allegedly initiating child protective proceedings against her maliciously and without probable cause. *See* Complaint, *Garcia v. Scoppetta,* (No. 03–1956)(E.D.N.Y. Apr. 23, 2003). In lieu

of answering, all defendants filed a motion to dismiss on the ground that the suit was barred by the doctrine of *res judicata*. In the alternative, the individual defendants moved for dismissal on the basis of qualified immunity.

While defendants' motion to dismiss in the instant action (*Garcia II*) was pending, the Court of Appeals for the Second Circuit issued its decision in *Nicholson v. Scoppetta*, 344 F.3d 154 (2d Cir.2003). Finding that "uncertain issues of state law precede [its] own constitutional inquiry," *id.* at 158, the Court certified three questions to the New York Court of Appeals:

1. Does the definition of a "neglected child" under N.Y. Family Ct. Act § 1012(f), (h) include instances in which the sole allegation of neglect is that the parent or other person legally responsible for the child's care allows the child to witness domestic abuse against the caretaker?

2. Can the injury or possible injury, if any, that results to a child who has witnessed domestic abuse against a parent or other caretaker constitute "danger" or "risk" to the child's "life or health," as those terms are defined in the N.Y. Family Ct. Act §§ 1022, 1024, 1026–1028?

3. Does the fact that the child witnessed such abuse suffice to demonstrate that "removal is necessary," N.Y. Family Ct. Act §§ 1022, 1024, 1027, or that "removal was in the child's best interests," N.Y. Family Ct. Act §§ 1028, 1052(b)(i)(A), or must the child protective agency offer additional, particularized evidence to justify removal?

*Id.* at 176–77. The New York Court of Appeals has yet to respond to the request for certification.

## III. Law

### A. Malicious Prosecution

▮ In order to prevail on a § 1983 claim for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, *Albright v. Oliver*, 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and establish the elements of a malicious prosecution claim under New York law. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002) (citations omitted). To establish a claim for malicious prosecution under New York law, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995) (citation omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983).

It is unclear whether a malicious prosecution claim for civil as opposed to criminal proceedings may give rise to a cause of action under section 1983. *See Easton v. Sundram*, 947 F.2d 1011, 1018 (2d Cir. 1991) ("We do not hold that civil malicious prosecution can never give rise to a cause of action under § 1983, although we suspect it normally will not."). *But see Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992) (plaintiff's section 1983 claim for malicious civil prosecution was properly dismissed); *Washington v. County of Rockland*, 211 F.Supp.2d 507, 513 n. 9 (S.D.N.Y.2002) (calling into doubt the holding in *Easton* after the Supreme Court's decision in *Albright*); *Garg v. Albany Industrial Dev. Agency*, 899 F.Supp. 961, 970 (N.D.N.Y.1995) (recognizing the abrogation of *Easton* in light of the Second Circuit's decision in *Spear*). Courts have also struggled with the issue whether neglect

proceedings in Family Court may give rise to a section 1983 claim for malicious prosecution. *See, e.g., Yuan v. Rivera,* 48 F.Supp.2d 335, 349 (S.D.N.Y.1999) ("[T]he groundless initiation of a case in Family Court may give rise to a claim for malicious prosecution."); *Taylor v. Evans,* 72 F.Supp.2d 298, 315 (S.D.N.Y.1999) (stating it is unclear whether a malicious prosecution claim is available for child abuse proceedings but nevertheless dismissing claim because mothers and children were not subjected to the type of conscience-shocking behavior that would transform state cause of action into constitutional one).

## B. *Res Judicata*

■ The doctrine of *res judicata,* or claim preclusion, holds that once a final judgment on the merits of an action is issued, the parties and their privies are precluded from relitigating issues that were or could have been raised in that action. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 284–85 (2d Cir.2000) (citations omitted). *Res judicata* "serves the interest of society and litigants in assuring the finality of judgments [and] fosters judicial economy and protects the parties from vexatious and expensive litigation." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000).

■ *Res judicata* is an affirmative defense. Fed.R.Civ.P. 8(c). A defendant asserting the defense must prove that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan,* 214 F.3d at 285.

■ The doctrine of *res judicata* applies where "the second suit involves the same claim—or nucleus of operative fact— as the first suit." *Interoceanica Corp. v.*

*Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997) (internal quotations and citations omitted). In order to ascertain whether two actions spring from the same transaction or claim, a court looks to "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* (internal quotations and citations omitted); *see also NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983) ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.").

■ If the two actions stem from the same transaction or series of transactions, *res judicata* will bar the second action even if it is based on a different legal theory. *See Woods v. Dunlop Tire Corporation,* 972 F.2d 36, 39 (2d Cir.1992). "[I]n order to avoid the sting" of *res judicata,* a party must take steps to preserve the second action either by seeking a stay in the first proceeding or amending the complaint. *Id.* at 41.

■ *Res judicata* "will not bar a suit based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts." *Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 113 (2d Cir.2000) (emphasis in original); *see also SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1464 (2d Cir.1996) ("The scope of litigation is framed by the complaint at the time it is filed. The rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were

not, required to be litigated.") (quoting *Los Angeles Branch NAACP v. Los Angeles Unified School District*, 750 F.2d 731, 739 (9th Cir.1984) (internal quotation marks and emphasis omitted)).

■ With respect to later-arising claims, a party may file a supplemental pleading. *See* Fed.R.Civ.P. 15(d) (permitting a party, upon motion, to serve a supplemental pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented"). A party is not required to supplement its complaint; it may file a new suit if it so chooses. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir.2000) ("Plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; Plaintiff may simply bring a later suit on those later-arising claims."); *see also Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997) ("Accordingly, if, after the first suit is underway, a defendant engages in actionable conduct, plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct. Plaintiff's failure to supplement the pleadings of his already commenced lawsuit will not result in a *res judicata* bar when he alleges defendant's later conduct as a cause of action in a second suit.").

C. Preclusive Effect of Rule 68 Judgments

Courts have been reluctant to apply the doctrine of *res judicata* to consent judgements such as those arising under Rule 68. *See, e.g., Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 274 (2d Cir.1992) (declining to adopt district court's reasoning that the rule of *res judicata* was applicable to a Rule 68 judgment). "To the extent that individual issues or entire judgments rest

on admission or consent, . . . a major element of preclusion [i.e. an adjudication on the merits] is missing." 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4443 at 251 (2d ed.2002) [hereinafter Wright, Miller, & Cooper]; *cf. id.* § 4435 at 132–34 ("The phrase 'on the merits' . . . is an unfortunate phrase, which could easily distract attention from the fundamental characteristics that entitle a judgment to greater or lesser preclusive effects. The characteristics that determine the extent of preclusion may have little to do with actual resolution of the merits, although the paradigm will always be a judgment entered after full trial of all disputed matters.").

■ It would be a mistake to suggest that Rule 68 judgments should be accorded no preclusive effect. "The plain purpose of Rule 68 is to encourage settlement and avoid litigation. The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek v. Chesny*, 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). If there were no limitation on the ability to bring suit following a Rule 68 offer and acceptance, there would be little finality to the judgment. Defendants would have less incentive to make offers of judgment if the possibility of future litigation could not be avoided. The purpose of the rule requires that Rule 68 judgments be given some preclusive effect.

■ "The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." Wright, Miller, & Cooper § 4443 at 262; *see also Goodheart Clothing Co., Inc.*, 962 F.2d at 272 ("Offers of judgment pursuant to Fed.R.Civ.P. 68 are construed according to ordinary contract principles."). "In most circumstances it is recognized that

consent agreements ordinarily are intended to preclude any further litigation on the claim presented...." Wright, Miller, & Cooper § 4443 at 265. Nevertheless, "[p]reclusion is most apt to be denied as to new claims that were not even formally presented" in the action settled under Rule 68. *See id.* § 4443 at 270.

Several contract principles are relevant in interpreting a Rule 68 judgment: "[I]f a writing, or the term in question, appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." *Goodheart Clothing Co., Inc.,* 962 F.2d at 272 (quoting John D. Calamari & Joseph M. Perillo, Contracts 166–67 (3d ed.1987)); *see also United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971) (applying the "four corners" analysis to a consent decree). "Contractual language is unambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Goodheart Clothing Co., Inc.,* 962 F.2d at 272 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir.1989) (internal quotation and citation omitted)). "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Goodheart Clothing Co., Inc.,* 962 F.2d at 272 (quoting *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir. 1990) (internal citations omitted)).

## D. Qualified Immunity

"The doctrine of qualified immunity evolved as a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury." *Kaminsky v. Rosenblum,* 929 F.2d 922, 924 (2d Cir. 1991). Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity has been held applicable to child protective caseworkers in section 1983 actions. *See van Emrik v. Chemung County Dept. of Social Services,* 911 F.2d 863, 865 (2d Cir. 1990).

"A defendant pleading qualified immunity on a motion to dismiss is entitled to prevail if the allegations in the complaint fail to 'state a claim of violation of clearly established law.'" *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997) (quoting *Behrens v. Pelletier,* 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (internal quotation and citation omitted)). In order for a right to be "clearly established," "the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In determining whether a particular right was clearly established, courts consider three factors: "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have

understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (internal quotations omitted).

■■■■ "Even when a plaintiff's federal rights are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified or good faith immunity might still be available as a bar to a plaintiff's suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). When officials "of reasonable competence could disagree" that such acts were objectively reasonable, qualified immunity is available. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

E. Certification for Interlocutory Appeal

■■■■ "A court of appeals has discretion to review an interlocutory order in a civil case if the trial court states in writing that its order involves a controlling question of law about which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation." *Koehler v. Bank of Bermuda Limited,* 101 F.3d 863, 864 (2d Cir.1996) (citing 28 U.S.C. 1292(b)). Section 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Id.* at 865. It is reserved for those cases in which an intermediate appeal would avoid fruitless litigation. *Id.* at 866–67.

■■■■ A district court's denial of qualified immunity is immediately appealable to the extent it turns on issues of law. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In contrast, a grant of qualified immunity is not immediately appealable because "it does not lead to any loss of right that

cannot be remedied on appeal" after the case becomes final. *See Trieste Restaurant and Cabaret, Inc. v. Village of Port Chester,* 96 F.3d 598, 599 (2d Cir.1996).

IV. Application of Law to Facts

A. Preclusive Effect of the Rule 68 Judgment

■■■ The Rule 68–based judgment in *Garcia I* does not preclude the claims sought to be asserted in *Garcia II.* An analysis of the four corners of the Rule 68 offer of judgment, accepted by plaintiff, reveals an agreement to a judgment "in this action." No mention is made of the intention to preclude litigation of any additional claims the plaintiff might assert in a valid second action. Because the language of the Rule 68 offer is unambiguous, there is no warrant for resort to extrinsic evidence of conversations the parties might have had before the Rule 68 offer was accepted regarding plaintiff's intention to file a second suit.

Defendants argue that the claims asserted in *Garcia II* arise from the same facts and circumstances as the claims asserted in *Garcia I* and, thus, should be precluded by the Rule 68 judgment. Although it is not necessary to hold that the rule of *res judicata* applies directly to the Rule 68 judgment in this case, an examination of the doctrine is helpful in illustrating why *Garcia II* should be deemed a separate and distinct action and thus not precluded under a contractual analysis.

Plaintiff filed *Garcia I* seeking damages for the allegedly unconstitutional removal of her children in August 2002. While her suit was pending, the Appellate Division reversed the Family Court's finding of neglect against her. The termination of the neglect proceedings in plaintiff's favor was an operative fact because it gave rise to a claim for malicious prosecution. Plaintiff's

claim for malicious prosecution in *Garcia II* arose well after the filing of *Garcia I*— and almost at the point that *Garcia I* was terminated. Plaintiff was not required to supplement her complaint to add the claim. Rather, she was entitled to, and did, file a new suit.

Plaintiff's claim for malicious prosecution in *Garcia II* is based on evidence which is distinct from her claim for the unconstitutional removal of her children in *Garcia I*. Although the impetus for both suits was the removal of plaintiff's children on August 27, 1999, the events which were the subject of plaintiff's claims in *Garcia I* ended on November 12, 1999, when her children were returned to her. In contrast, the events giving rise to plaintiff's claim for malicious prosecution in *Garcia II* did not terminate until February 25, 2003, when the Appellate Division reversed the finding of neglect against her. Events occurring between November 12, 1999 and February 25, 2003 are relevant to a court's adjudication of the malicious prosecution claim, while they would not appear to be relevant to the claim for the unconstitutional removal of the children.

Because *Garcia II* is based upon the occurrence of operative facts arising after the filing of *Garcia I*, and the evidence in *Garcia II* is largely distinct from that in *Garcia I*, plaintiff's claim for malicious prosecution would be considered a valid second action under a *res judicata* analysis. Such a determination under general *res judicata* concepts, while not dispositive of the preclusive effect of the specific Rule 68 judgment in *Garcia I*, is relevant in determining the contractual scope of the judgment (i.e. the design of the parties). The language of the Rule 68 offer of judgment does not suggest a design to preclude claims asserted in any "action" other than the one at issue *Garcia I*. *Garcia II* is

not precluded by the judgment in *Garcia I*.

## B. Qualified Immunity

 The individual defendants in this case are entitled to qualified immunity. Even accepting the allegations of plaintiff's complaint as true, she fails to state a claim of violation of clearly established law.

The law of the Court of Appeals for the Second Circuit does not conclusively support the existence of the right in question. Its decision in *Nicholson v. Scoppetta* certifying key issues to the New York Court of Appeals indicates that critical areas of the law in this field are not yet established. Although the *Nicholson* opinion focuses on the uncertainty surrounding the law on removals, it is also relevant to prosecutions for neglect. One of the questions the Court certified to the New York Court of Appeals concerns the definition of a "neglected child" under the New York Family Court Act and whether it includes instances in which the sole allegation of neglect is allowing the child to witness domestic violence. Such a determination is relevant to whether defendants may prosecute mothers for neglect on this basis alone.

In the absence of clearly established law on what constitutes a neglected child, defendants can not reasonably have been expected to know whether or not the initiation of neglect proceedings against plaintiff violated her rights. They are entitled to qualified immunity.

## C. Certification for Interlocutory Appeal

 This court will not certify for interlocutory appeal to the Court of Appeals for the Second Circuit, pursuant to 28 U.S.C. § 1292(b), its denial of the City's motion to dismiss on the ground of *res judicata*. The motion to dismiss does not involve a controlling question of law about which there is substantial ground for dif-

ference of opinion. Dismissal as to the individual defendants on the basis of qualified immunity is also not certified for appeal.

## V. Conclusion

The complaint is dismissed as to the individual defendants on the basis of qualified immunity. The City's motion to dismiss the complaint is denied. Certification for appeal pursuant to 28 U.S.C. § 1292(b) is denied.

SO ORDERED.