**133 Nev., Advance Opinion 78**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROBERT L. MENDENHALL, AN INDIVIDUAL; AND SUNRIDGE CORPORATION, A NEVADA CORPORATION,<br>Appellants,<br>vs.<br>RONALD TASSINARI, AN INDIVIDUAL; AND AMERICAN VANTAGE BROWNSTONE, LLC, A NEVADA LIMITED LIABILITY COMPANY,<br>Respondents. | No. 68053<br><br>**FILED**<br><br>OCT 05 2017<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order dismissing a tort action. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Affirmed.*

Marquis Aurbach Coffing and Micah S. Echols, Avece M. Higbee, and Adele V. Karoum, Las Vegas; Howard & Howard Attorneys PLLC and Gwen Rutar Mullins and Wade B. Gochnour, Las Vegas,
for Appellants.

Santoro Whitmire and Nicholas J. Santoro and Oliver J. Pancheri, Las Vegas; Harry Paul Marquis, Chtd., and Harry Paul Marquis, Las Vegas; Legal Offices of James J. Lee and James J. Lee, Las Vegas,
for Respondents.

BEFORE DOUGLAS, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

This case addresses the tension in the law that arises where a party that served an NRCP 68 offer of judgment discovers facts, during the ten-day irrevocable period for acceptance of NRCP 68 offers, that would otherwise impact the offering party's decision to serve an NRCP 68 offer in the first instance. Specifically, we must determine whether claims that are brought by the offering party in a second action, and arise out of these facts that were discovered after serving the NRCP 68 offer, are barred by general principles of claim preclusion or by the very terms of the NRCP 68 offer.

We hold that both the general principles of claim preclusion and the terms in an NRCP 68 offer are implicated where a party seeks to relitigate claims after entry of a final judgment pursuant to the NRCP 68 offer, even when they arise out of facts discovered during the NRCP 68 offer's ten-day irrevocable period for acceptance. We further hold that these subsequent claims are barred where principles of claim preclusion apply or, in the alternative, where the terms of the offer of judgment indicate that such claims are barred. Because appellants' claims are barred by both the doctrine of claim preclusion and by the terms of the offer of judgment, we affirm the district court's decision.

## FACTUAL AND PROCEDURAL HISTORY

This appeal involves two distinct cases. The first case was dismissed after payment of an accepted offer of judgment (district court case no. A653822, the First Action), and the second case was dismissed under the doctrine of claim preclusion because it raised claims that were




or could have been raised in the First Action (district court case no. A708281, the Second Action).

In the First Action, Brownstone Gold Town, LLC, and Brownstone Gold Town CV, LLC (collectively, the Brownstone Entities), sued appellants Robert Mendenhall and Sunridge Corporation for allegedly breaching an agreement entered into by the parties (the Term Sheet).[1] Pursuant to the Term Sheet, appellants agreed to contribute real property for the development of a 300-room hotel with casino and convention space. In exchange for the contribution of the property, appellants agreed to receive a 27 percent membership interest. The Term Sheet further provided that the Brownstone Entities would contribute $1,500,000 for a 2.7 percent membership interest, while other unnamed, nonparty investors (the Other Investors) would contribute $7,000,000 for a 12.6 percent membership interest. Additionally, the Term Sheet included signature blocks for the following four parties: (1) respondent American Vantage Brownstone, LLC (AVB), (2) the Brownstone Entities, (3) appellants, and (4) the Other Investors.

Relying on the Term Sheet, the Brownstone Entities invested considerable time and expense in acquiring plans, surveys, approvals, and land use entitlements. However, in spite of their assurances that they would contribute the property, appellants failed to fulfill this obligation. Alleging that appellants had breached the Term Sheet, the Brownstone Entities brought suit.

Before trial commenced in the First Action, appellants presented the Brownstone Entities with an offer of judgment (the Offer) in

---

[1]AVB was the parent company of the Brownstone Entities.

 

the amount of $1,200,000. The Offer was "in settlement of all claims between and among ROBERT L. MENDENHALL, SUNRIDGE CORPORATION, BROWNSTONE GOLD TOWN, LLC and BROWNSTONE GOLD TOWN CV, LLC *or those asserted or that could have been asserted on behalf of each of them against one another."* (Emphasis added.) The Offer further stated:

> Acceptance of this Offer of Judgment would fully discharge and release any and all claims as alleged, *or that could have been alleged*, in this action by ROBERT L. MENDENHALL, SUNRIDGE CORPORATION, BROWNSTONE GOLD TOWN, LLC, and BROWNSTONE GOLD TOWN CV, LLC, including, but not limited to, those asserted in the Complaint *as well as any related or potential claims* that could be asserted in this action against one another.

(Emphases added.)

Near the end of discovery, and during the Offer's ten-day irrevocable period, appellants learned that respondent Ronald Tassinari, a corporate officer of AVB, allegedly committed fraud concerning the Term Sheet. In particular, Tassinari testified during his deposition that he signed the Term Sheet on behalf of the Other Investors, even though prior representations were made that there were nonparty investors who would contribute the required amount of capital. Thus, appellants filed for leave to amend their answer to add a third-party complaint against respondents and assert counterclaims against the Brownstone Entities. The proposed amended pleading included allegations that Tassinari was a principal of the Brownstone Entities and AVB and that Tassinari, individually and in his role with the Brownstone Entities and AVB, misled appellants into believing there were other third-party investors. Appellants' motion

 

argued that the claims arose out of the same set of facts and transactions as those set forth in the complaint.

The Brownstone Entities accepted the offer of judgment and the First Action was dismissed with prejudice, however, rendering appellants' motion moot. A few months after the Offer was accepted, appellants initiated the Second Action by filing a complaint that alleged fraud against respondents. Respondents subsequently filed a motion to dismiss appellants' complaint, which the district court granted. Ultimately, the district court determined that the doctrine of claim preclusion barred the Second Action. The court found that (1) the order of dismissal from the First Action was a final, valid judgment; (2) the claims asserted by appellants in the Second Action were based upon the same claims asserted in the First Action, or they could have been brought in the First Action; and (3) respondents were privies of the Brownstone Entities. This appeal followed.

## DISCUSSION

The crux of appellants' argument is that the district court misinterpreted the doctrine of claim preclusion when it granted respondents' motion to dismiss. In particular, appellants argue that (1) respondents are not privies of the Brownstone Entities; (2) claim preclusion does not apply because the claims in the Second Action were not based on the same cause of action and were not "brought in the first case" because the district court did not consider them; (3) the fraud claims they asserted in the Second Action were not compulsory claims, but merely permissive claims, and thus the doctrine of claim preclusion does not apply; and (4) the fraud claims they asserted in the Second Action could not have been asserted in the First Action because they discovered respondents' alleged fraud during the Offer's ten-day irrevocable period,

5

and thus, a formal barrier existed to their ability to bring the claims brought forth in the Second Action.

In deciding a motion to dismiss, if the district court considers matters outside the pleadings—as was the case here—the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." NRCP 12(b); *Thompson v. City of N. Las Vegas*, 108 Nev. 435, 438, 833 P.2d 1132, 1134 (1992). Pursuant to NRCP 56(c), summary judgment is proper when no genuine issue of material fact remains and the movant is entitled to a judgment as a matter of law. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

*Claim preclusion applies*

This court has established a three-part test for determining whether claim preclusion applies. *See Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1054, 194 P.3d 709, 713 (2008), *holding modified on other grounds by Weddell v. Sharp*, 131 Nev., Adv. Op. 28, 350 P.3d 80 (2015). These three factors include determining whether "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Id.* (footnote omitted).

*The parties or their privies are the same*

Nevada law previously limited the concept of privity to situations where the individual "acquired an interest in the subject matter affected by the judgment through . . . one of the parties, as by inheritance, succession, or purchase." *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 481, 215 P.3d 709, 718 (2009) (internal quotation marks omitted), *modified on other grounds by Garcia v. Prudential Ins. Co. of Am.*, 129 Nev. 15, 293 P.3d 869 (2013). More recently, in *Alcantara v. Wal-Mart Stores, Inc.*, this court adopted the Restatement (Second) of Judgments

Supreme Court
OF
Nevada

(O) 1947A

6

§ 41, which additionally recognizes privity under an "adequate representation" analysis, but this applies only to persons who represent a litigant's interests. 130 Nev. 252, 261, 321 P.3d 912, 917 (2014).

"However, privity may also be found in other circumstances, beyond those categories noted in the Restatement . . . ." *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011). Indeed, "[c]ontemporary courts . . . have broadly construed the concept of privity, far beyond its literal and historic meaning, to include any situation in which the relationship between the parties is sufficiently close to supply preclusion." *Vets North, Inc. v. Libutti*, No. CV-01-7773-DRHETB, 2003 WL 21542554, at *11 (E.D.N.Y. Jan. 24, 2003) (internal quotation marks omitted). The United States Court of Appeals for the Ninth Circuit, for example, has stated that although the concept of privity was traditionally limited to certain "legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest," such as co-owners of property, decedents and heirs, joint obligees, etc., *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1053 (9th Cir. 2005), it now encompass a relationship in which "there is substantial identity between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081-82 (9th Cir. 2003) (internal quotation marks omitted). This expansion has been, at least in part, dictated by the reality that privity is not susceptible to a clear definition. *See Rucker*, 794 N.W.2d at 118; *Clemmer v. Hartford Ins. Co.*, 587 P.2d 1098, 1102 (Cal. 1978), *overruled on other grounds by Ryan v. Rosenfeld*, 395 P.3d 689 (Cal. 2017).

We recognize that privity does not lend itself to a neat definition, thus determining privity for preclusion purposes requires a

close examination of the facts and circumstances of each case. *Rucker*, 794 N.W.2d at 118; *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 71 Cal. Rptr. 2d 77, 88 (Ct. App. 1998); *see also Weddell v. Sharp*, 131 Nev., Adv. Op. 28, 350 P.3d 80 (2015) (modifying the *Five Star* test to include claims that fall under a theory of nonmutual claim preclusion).

Here, the record demonstrates a substantial identity between the parties. Appellants were parties to both the First Action and the Second Action. Although respondents were not parties to the First Action, the district court found that they were privies of the Brownstone Entities, plaintiffs in the First Action. In particular, AVB was the Brownstone Entities' parent company and a party to the Term Sheet. Furthermore, Tassinari, in his capacity as a corporate officer of AVB, signed the Term Sheet. Appellants acknowledged this close relationship by alleging that Tassinari acted both individually and on behalf of the Brownstone Entities and AVB in making representations to appellants in order to induce them to execute the Term Sheet. Additionally, both respondents and the Brownstone Entities obtained a legal right under the Term Sheet, which appellants breached by failing to provide the property for development of the casino and convention space. More importantly, fraud in the inducement is an affirmative defense to a breach of contract claim, and respondents would have had the same interest in defending against fraud committed by the Brownstone Entities. Indeed, appellants seemed to recognize this when filing the motion to amend the pleadings in the First Action to include claims against respondents and the Brownstone Entities.

*The final judgment is valid*

Although we have never addressed whether an accepted offer of judgment and subsequent order under NRCP 68 constitutes a final judgment for purposes of claim preclusion, other courts have held that

 

they do. *See Arizona v. California*, 530 U.S. 392, 414 ("In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim...."), *supplemented*, 531 U.S. 1 (2000); *Mallory v. Eyrich*, 922 F.2d 1273, 1280 (6th Cir. 1991) (stating that a Rule 68 judgment is a particular type of consent judgment); *see also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443 (2d ed. 2002). We agree and hold that an order based on an accepted offer of judgment under NRCP 68 constitutes a final judgment for purposes of claim preclusion.

*The Second Action is based on the same claims or any part of them that were or could have been brought in the First Action*

Regarding the issue of commonality between the initial and subsequent claims, this court had previously articulated that "the first and second complaint" needed to be "based on the same set of common facts" and had to seek the same relief. *Edwards v. Ghandour*, 123 Nev. 105, 118, 159 P.3d 1086, 1094-95 (2007), *abrogated by Five Star*, 124 Nev. 1048, 194 P.3d 709. In addition, the court looked to "whether an identity of causes of action exist[ed] between the two complaints." *Id.* at 118, 159 P.3d at 1095. *Five Star*, however, signaled a departure from this "overly rigid" test for applying claim preclusion. *See* 124 Nev. at 1054, 194 P.3d at 712. The *Five Star* court rejected the test set forth in *Edwards* and applied claim preclusion where "the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Id.* at 1054, 194 P.3d at 713. The test for determining whether the claims, or any part of them, are barred in a subsequent action is if they are "based on the same set of facts and circumstances as the [initial action]." *Id.* at 1055, 194 P.3d at 714.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Here, both claims are based on the facts underlying the Term Sheet. The Brownstone Entities alleged a breach of contract based on appellants' failure to contribute the property upon which the 300-room hotel and casino with convention space would be built, as reflected in the Term Sheet. Appellants' claims in the Second Action are clearly based on the same circumstances as those in the First Action, as appellants allege that they were fraudulently induced into signing the Term Sheet by making it appear that other investors were contributing funds. These claims could clearly have been raised in the First Action as an affirmative defense. Furthermore, appellants' motion to amend the pleadings in the First Action reflects the reality that these claims could have been brought in the First Action. Accordingly, the third *Five Star* factor is met.[2]

*The claims were not permissive counterclaims*

Appellants also argue that claim preclusion does not apply because the claims brought in the Second Action were permissive in nature, as they had not matured at the time of the responsive pleading. We disagree. Under NRCP 13(a), a claim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." NRCP 13(a) further instructs that "[a] pleading shall state [any compulsory claim] which at the time of serving the pleading the

_____

[2]Appellants argue that for claim preclusion to apply in Nevada, the two sets of claims must be based on the same "cause of action" and that the test for identical causes of action is whether the sets of facts essential to maintain the two suits are the same. However, the cases that appellants cite in support of their contention all predate *Edwards,* 123 Nev. 105, 159 P.3d 1086, which, as we recognized in *Five Star*, was the first claim preclusion test espoused by this court. 124 Nev. at 1054, 194 P.3d at 712. Neither *Five Star* nor *Weddell* requires such a limited interpretation of claim preclusion.

pleader has against any *opposing* party[.]" The definition of transaction or occurrence does not require an identity of factual backgrounds. *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926). Instead, the relevant consideration is whether the pertinent facts of the different claims are so logically related that issues of judicial economy and fairness mandate that all issues be tried in one suit. *See United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979); *see also* Michelle S. Simon, *Defining the Limits of Supplemental Jurisdiction Under 28 U.S.C. § 1367: A Hearty Welcome to Permissive Counterclaims*, 9 Lewis & Clark L. Rev. 295, 301-02 (2005) (stating that "[i]n the most common test, courts have held that the requirement of 'same transaction or occurrence' is met when there is a 'logical relationship' between the counterclaim and the main claim"). Here, both claims are logically related because they both arise out of the same transaction—the signing of the Term Sheet. The Brownstone Entities alleged that appellants breached their duties under the Term Sheet. On the other hand, appellants allege that they were fraudulently induced into signing the Term Sheet, an affirmative defense. Indeed, appellants' motion to amend the pleadings specifically states that the claims arose out of the same set of facts and transactions as those set forth in the complaint. Accordingly, we conclude that the claims set forth in the Second Action are so logically related to those in the First Action that issues of judicial economy and fairness mandate that they be tried in one suit.

Nevertheless, appellants are correct in that there is a maturity exception to compulsory claims. *See Stone v. Dep't of Aviation*, 453 F.3d 1271, 1276 (10th Cir. 2006) (stating that "a party need not assert a counterclaim if it has not matured at the time of the pleading, even if it

SUPREME COURT
OF
NEVADA

(O) 1947A

11

arises from the same transaction or occurrence") (internal quotation marks omitted); *Stoller Fisheries, Inc. v. Am. Title Ins. Co.*, 258 N.W.2d 336, 342 (Iowa 1977) (analyzing the maturity exception to compulsory claims). "[A] claim matures when the holder thereof is entitled to a legal remedy" or when it accrues. *Stoller*, 258 N.W.2d at 342; *Harris Cty. v. Luna-Prudencio*, 294 S.W.3d 690, 698 (Tex. App. 2009). A legal remedy exists where "the events giving rise to the cause of action develop." *Sky View Fin., Inc. v. Bellinger*, 554 N.W.2d 694, 697 (Iowa 1996). A claim "accrues when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990). Here, appellants were entitled to a legal remedy, and their claims had accrued. Tassinari had signed in the line marked for "Other Investor(s)" before the complaint was even filed. These signatures gave rise to the cause of action of fraud in the inducement. Furthermore, appellants sustained an injury when the Brownstone Entities filed a breach of contract claim based on a contract that appellants were allegedly induced into signing. Thus, appellants' claims had matured.

There is also an exception for claims acquired after the responsive pleadings. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1428 (2010) (noting "[a]n after-acquired claim, even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, need not be pleaded supplementally; the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit"). When a party does not know of a claim until after its pleading, it constitutes an after-acquired claim. *See Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 318 P.3d 6, 11, 14



(Colo. App. 2012). However, even if appellants did not know of the alleged fraud until after the responsive pleading, their claim is not an "after-arising claim" if the lack of knowledge was due to their own negligence or lack of reasonable diligence. *Id.* at 11, 14. Here, appellants had the Term Sheet with Tassinari's signature on the signature blocks for both AVB and "Other Investor(s)" for nearly *seven years* prior to the deposition. At the very least, due diligence would have revealed what appeared to be identical signatures on the signature blocks for AVB and the "Other Investor(s)." Accordingly, the claims were compulsory and no exception applied.

*No formal barriers existed that prevented appellants' claims in the First Action*

Appellants also argue that the Offer's ten-day irrevocable period imposed a formal barrier for which an exception to claim preclusion should be recognized. The Restatement (Second) of Judgments does provide an exception to claim preclusion where "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory . . . scheme . . . ." Restatement (Second) of Judgments § 26(1)(d) (Am. Law Inst. 1982). However, comment e, which elaborates on this subsection, clarifies that this exception only applies where "[t]he adjudication of a particular action . . . in retrospect appear[s] to create such inequities in the context of a statutory scheme as a whole that a second action to correct the inequity may be called for . . . ." *Id.*

As this court alluded to in *Nava v. Second Judicial Dist. Court*, the statutory scheme provides parties in appellants' position with the ability to seek relief by filing a motion under NRCP 60(b). 118 Nev. 396, 398 n.2, 46 P.3d 60, 61 n.2 (2002). In *Nava*, a civil suit was brought against the defendant based on an accident where the defendant, under

 

the influence of alcohol, rear-ended real party in interest's vehicle. *Id.* at 396-97, 46 P.3d at 60. The defendant was served with an offer of judgment by the real party in interest in the amount of $100,000. *Id.* at 397, 46 P.3d at 60. Under NRCP 68 and former NRS 117.115,[3] the defendant was required to accept or deny the offer within ten days of service. *Id.* Five days after service of the offer, the defendant received notice that the offer was being withdrawn. *Id.* The reason for the withdrawal was that the real party in interest had elected to have back surgery as a result of the accident, which would increase the damages to more than the $100,000 that had been included in the offer. *Id.* The defendant accepted the offer within the ten-day acceptance period and ignored the notice of withdrawal. *Id.* This court concluded that the offer was irrevocable during the ten-day acceptance period and that there was no provision in the statute to withdraw before the ten days expired. *Id.* at 398, 46 P.3d at 61. However, this court also indicated that the real party in interest could file a motion under NRCP 60(b) to be relieved from a final judgment or order, and that the district court could then evaluate his claims. *Id.* at 398 n.2, 46 P.3d at 61 n.2.

As was the case for the real party in interest in *Nava*, appellants here allegedly discovered facts that would potentially affect the offer of judgment they served on respondents during the irrevocable ten-day period. Furthermore, as was the case for the real party in interest in *Nava*, NRCP 60(b) provides relief for appellants. Specifically, a party may be relieved from a judgment or order where there has been newly

---

[3]NRS 17.115 has since been repealed. *See* 2015 Nev. Stat., ch. 442, § 41, at 2569.

discovered evidence, or where there has been fraud, misrepresentation, or other misconduct by the opposing party. *See* NRCP 60(b). Thus, had appellants filed an NRCP 60(b) motion, "the district court could [have] evaluate[d] [their] claims." *Nava*, 118 Nev. at 398 n.2, 46 P.3d at 61 n.2. Accordingly, appellants' case does not fall under § 26(1)(d) of the Restatement (Second) of Judgments because the adjudication of their case in retrospect does not "create such inequities in the context of a statutory scheme as a whole that a second action to correct the inequity may be called for . . . ." Restatement (Second) of Judgments § 26(1)(d) cmt. e (Am. Law Inst. 1982).[4]

Because the three *Five Star* factors are met and no exception to claim preclusion applies, we hold that the claims brought in the Second Action are barred.

---

[4]Appellants raise several other issues regarding claim preclusion, including the arguments that (1) the district court intended to reserve the claims that were in appellants' motion to amend the pleadings, and (2) claim preclusion does not apply where the claims could not have been brought earlier under NRCP 11. We disagree. First, the case cited by appellants stands for the proposition that when a court fails to consider a particular claim that was a part of an action, that claim can reasonably be considered to be reserved. *See Dodd v. Hood River Cty.*, 59 F.3d 852, 862 (9th Cir. 1995). That case does not extend to situations, like here, where the district court fails to consider claims that *were not* part of the action. *See id.* Second, the record suggests that appellants had the Term Sheet in their possession for nearly seven years prior to filing the motion to amend the pleadings. Even without Tassinari's deposition, it is difficult to say that a court would have found that there was no good faith basis for bringing a fraud claim based on the Term Sheet signatures alone, such that NRCP 11 precluded the claim.

SUPREME COURT
OF
NEVADA

(O) 1947A

*The terms in the Offer foreclose the claims in the Second Action*

In spite of the claims in the Second Action being barred by general principles of claim preclusion, this court recognizes that a consent judgment, such as one based on an NRCP 68 offer and acceptance, may alter the preclusive effects of a judgment. *See May v. Parker-Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1010 (10th Cir. 1990) ("This court recognizes that consent decrees are of a contractual nature and, as such, their terms may alter the preclusive effects of a judgment."); *Mallory*, 922 F.2d at 1280 (stating that an offer of judgment is a particular type of consent judgment); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443 (2d ed. 2002) (noting that the nature of consent judgments allows for claim preclusion based on the parties' intent). Therefore, it is also necessary to determine whether the claims in the Second Action are precluded by the consent decree in this case.[5] *See Garcia v. Scoppetta*, 289 F. Supp. 2d 343, 350 (E.D.N.Y. 2003) ("It would be a mistake to suggest that [offers of judgment] should be accorded no preclusive effect.").

---

[5]We note that in *May v. Anderson*, this court stated that "once a case has been filed in court, the bar to relitigating that case after an offer of judgment has been accepted does not depend on the terms of a release but rather on the claim preclusion effect of res judicata." 121 Nev. 668, 674, 119 P.3d 1254, 1258 (2005). In *May*, however, we were addressing "whether the essential terms of a release are a material part of a settlement agreement, without which the settlement agreement is never formed, or whether the release's terms are inconsequential in determining whether the parties have reached a settlement agreement." *Id.* at 670, 119 Nev. at 1256. The preclusive effect of an offer of judgment was not squarely before this court, and, thus, these statements are not controlling. *See Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 282, 21 P.3d 16, 22 (2001) (stating that dicta is not controlling).

 

As a consent decree is contractual in nature, it is interpreted according to general principles governing the interpretation of contracts. *See Hertz v. State, Dep't of Corr.*, 230 P.3d 663, 669 (Alaska 2010); *Commonwealth v. UPMC*, 129 A.3d 441, 463 (Pa. 2015); *State, Dep't of Ecology v. Tiger Oil Corp.*, 271 P.3d 331, 350 (Wash. Ct. App. 2012). "This court initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Am. First Fed. Credit Union v. Soro*, 131 Nev., Adv. Op. 73, 359 P.3d 105, 106 (2015) (internal quotation marks omitted). In interpreting a contract, "the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself." *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007) (internal quotation marks omitted). Furthermore, "[a] court should not interpret a contract so as to make meaningless its provisions," and "[e]very word must be given effect if at all possible." *Bielar v. Washoe Health Sys., Inc.*, 129 Nev. 459, 465, 306 P.3d 360, 364 (2013) (second alteration in original) (internal quotation marks omitted). Lastly, any ambiguity is construed against the drafter. *Anvui*, 123 Nev. at 215-16, 163 P.3d at 407.

Here, the terms of the Offer evince an intent by the parties to prevent a broad set of claims from being raised in a second action. The Offer settled "all claims between *and among*" the parties "or those asserted *or that could have been asserted* on behalf of each of them against one another." (Emphases added.) These included, "but [were] not limited to, those [claims] asserted in the [c]omplaint *as well as any related or potential claims that could [have] be[en] asserted in [the first] action* against one another." (Emphasis added.)

Supreme Court
OF
NEVADA

(O) 1947A

At the outset, it must be noted that the Offer uses the phrase "between *and among*" the parties. (Emphasis added.) *Merriam-Webster's* defines "among" as "in company or association with." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2007). Thus, the very terms of the Offer extends the preclusive effects to claims that are associated with the parties. Appellants' claims against respondents are clearly in "association with" both appellants and the Brownstone Entities, as they are based on the duties arising under the Term Sheet and involve a subsidiary of AVB. The intent of the parties to give preclusive effect to a broad set of claims is further demonstrated by the Offer's terms that it was in settlement of the claims brought in the First Action, "as well as *any related or potential claims* that could [have] be[en] asserted in the [First] [A]ction." (Emphasis added.)

This broad language also comports with the purpose behind offers of judgment. The purpose of an offer of judgment under former NRS 17.115 and NRCP 68 is to facilitate and encourage a settlement by placing a risk of loss on the offeree who fails to accept the offer, with no risk to the offeror, thus encouraging both offers and acceptance of offers. *Matthews v. Collman*, 110 Nev. 940, 950, 878 P.2d 971, 978 (1994); *see also Marek v. Chesny*, 473 U.S. 1, 5 (1985) (noting that the primary purpose behind offers of judgment is to encourage the compromise and settlement of litigation and that they "prompt[ ] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits"); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3001 (2014) (stating that by encouraging compromise, offers of judgment discourage both protracted litigation and vexatious law suits).

Supreme Court
of
Nevada

(O) 1947A

18

The fact that the claims in the Second Action were related or potential claims that could have been brought in the First Action, and that they involved claims "between and among [the parties]," is further reflected in the fact that appellants attempted to amend the pleadings in the First Action to include these claims against respondents. As appellants' proposed amended pleading states, this was based on the assertion that Tassinari was acting on behalf of both the Brownstone Entities, as well as AVB, when he allegedly committed fraud. Furthermore, in their motion to amend the pleadings, appellants argued that these additional claims "ar[o]se out of the same set of facts set forth in the [c]omplaint," which conflicts with the position they now assert. Lastly, to the extent that there is any ambiguity in the phrase "between and among," this court construes the ambiguity against appellants, the drafters of the Offer. *Anvui*, 123 Nev. at 215-16, 163 P.3d at 407.

We hold that the broad scope of the Offer, drafted by appellants no less, evinces the parties' intent to preclude the types of claims set forth in the Second Action. We reiterate that appellants had an avenue for relief in order to clarify the terms of the Offer. We further reiterate that appellants failed to pursue this avenue for relief. Thus, the NRCP 68 order entered by the district court after acceptance of the Offer stands. Accordingly, as was the case under claim preclusion principles, the very terms of the Offer foreclose a different outcome.

 

## CONCLUSION

We hold that appellants' claims in the Second Action are barred by claim preclusion. We further hold that the broad terms set forth in the offer of judgment evince an intent by the parties to similarly bar these claims. Accordingly, we affirm the district court's order dismissing the Second Action.

_____, J.
Douglas

We concur:

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A