ANVUI, LLC, A NEVADA LIMITED LIABILITY COMPANY, APPELLANT, v. G.L. DRAGON, LLC, A NEVADA LIMITED LIABILITY COMPANY, RESPONDENT.

No. 48467

July 26, 2007                                    163 P.3d 405

*Snell & Wilmer, LLP*, and *John S. Delikanakis* and *Elizabeth R. Brennan*, Las Vegas, for Appellant.

*Reade & Associates* and *R. Christopher Reade* and *Andrew H. Pastwick*, Las Vegas, for Respondent.

---

Before GIBBONS, DOUGLAS and CHERRY, JJ.

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we consider whether, in an NRS 40.253(6) summary eviction proceeding, appellant raised any legal defense to allegations of its unlawful detainer of the premises at issue, precluding its summary eviction. In order to reach that issue, and since this is a matter of first impression, we must first conclude that the standard for our review of a district court's order granting summary eviction is the same as our review of a district court's order granting summary judgment. We conclude that appellant raised a legal defense, precluding its eviction. Accordingly, we reverse the district court's order granting summary eviction and a writ of restitution and ejectment.

### FACTUAL BACKGROUND

Appellant Anvui, LLC, leased a commercial building from respondent G.L. Dragon, LLC. The lease states that Dragon is entitled to receive basic rent "free and clear of any and all expenses, costs, impositions, taxes, assessments, liens or charges of any nature whatsoever." The lease also requires Anvui to pay all operating costs, which are defined as "all expenses and disburse-

ments . . . that [Dragon] incurs in connection with the ownership, operation, and maintenance of the Premises." Finally, Section 14 of the lease agreement states that "[s]hould [Anvui] fail to cure any monetary default within ninety (90) days after written notice has been provided, [Anvui] and [Dragon] agree to cooperate in immediate sale of [Anvui's] operations at the highest and best price possible."

Anvui and Dragon also entered into a separate "Agreement to Purchase Real Property and Capital Improvements" (purchase agreement). That agreement recites that Dragon paid significant sums of money for two types of costs: (1) "capital improvement out-of-pocket costs directly relating to the construction" of the premises and "the common area of the real property" and (2) operational out-of-pocket costs "directly relating to the operations of [Anvui's business]." With respect to Dragon's operational out-of-pocket costs, they took the form of (1) a $746,000 loan to Anvui and its principal and (2) a $450,000 credit line to provide cash, furniture, and equipment for Anvui's business operations.

After Anvui took possession of the premises on September 1, 2005, it paid all invoiced amounts, including amounts for basic rent, taxes, insurance, common area maintenance fees, and interest on Dragon's expenses for operational out-of-pocket costs as defined in the purchase agreement, through May 2006. Beginning in June 2006, however, Anvui began to fall behind in its payments. In September 2006, Anvui initially objected to being billed for the interest. Between June and November of that year, Dragon invoiced Anvui for a total of $374,931. For that same period, Anvui made payments totaling only $126,578.76.

Anticipating that Dragon would soon seek eviction and hoping to win a declaration that it was not in breach of the lease, Anvui filed a verified complaint for declaratory relief, breach of contract, and injunctive relief. After Dragon served Anvui with a five-day notice to quit, Dragon responded to Anvui's complaint by filing a motion for an order to show cause why a writ of restitution and ejectment should not be issued, or in the alternative, for summary eviction. Dragon requested an immediate hearing, which the district court set.

At the hearing, Anvui argued, among other things, that Section 14 of the lease precluded Dragon from seeking summary eviction and restitution of the premises because that section specifies that Dragon's only remedy in the event of Anvui's breach is to cooperate in the immediate sale of the business at the highest and best possible price. The district court considered the affidavits filed by the parties and determined that Anvui was in breach of the lease and guilty of unlawful detainer. The court granted Dragon's request for summary eviction and accordingly entered an order for summary eviction and a writ of restitution and ejectment. This appeal

followed, and we granted Anvui's request for a stay of the district court's order pending appeal.

## DISCUSSION

### Standard of review

As a matter of first impression, we conclude that an order granting summary eviction under NRS 40.253(6) should be reviewed on appeal based upon the standard for review of an order granting summary judgment under NRCP 56 because these proceedings are analogous. This court reviews orders granting summary judgment de novo to determine whether the evidence properly before the district court "demonstrate[s] that no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.' "[1] Accordingly, our review of the district court's order granting summary eviction is de novo.

### Anvui raised a legal defense as to the unlawful detainer

NRS 40.253(6) states that after a hearing "to determine the truthfulness and sufficiency of [the affidavits and notices filed, summary eviction will be granted] [i]f the court determines that there is no legal defense . . . and the tenant is guilty of an unlawful detainer." On appeal, Anvui contends that the district court erred in granting summary eviction because it raised a legal defense to its alleged unlawful detainer and that Dragon is required to follow the procedures set forth in NRS 40.290 to 40.420. We agree and conclude that the district court erroneously found in Dragon's favor following the hearing on Dragon's affidavit of complaint for summary eviction.

"Construction of a contractual term is a question of law,"[2] which we review de novo.[3] In interpreting a contract, " 'the court shall effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself.' "[4] A contract is ambiguous when it is subject to more than one reasonable interpretation.[5] Any ambiguity, moreover,

[1]*Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (quoting NRCP 56(c)).

[2]*NGA #2 Ltd. Liab. Co. v. Rains*, 113 Nev. 1151, 1158, 946 P.2d 163, 167 (1997).

[3]*May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).

[4]*NGA #2*, 113 Nev. at 1158, 946 P.2d at 167 (quoting *Davis v. Nevada National Bank*, 103 Nev. 220, 223, 737 P.2d 503, 505 (1987)).

[5]*Shelton v. Shelton*, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003).

should be construed against the drafter.[6] The parties' intentions regarding a contractual provision present a question of fact.[7]

Here, the parties' lease agreement is ambiguous as to the action that Dragon may take in the event of a default. Specifically, Section 14 of the lease agreement states that ''[s]hould [Anvui] fail to cure any monetary default within ninety (90) days after written notice has been provided, [Anvui] and [Dragon] agree to cooperate in immediate sale of [Anvui's] operations at the highest and best price possible.'' That provision is ambiguous as to whether it precludes Dragon from initially seeking restitution of the premises. Under Anvui's interpretation, Dragon's only remedy is to sell Anvui's business. In contrast, Dragon contends that it can seek to sell Anvui's business while simultaneously seeking restitution of the premises. This ambiguity creates a genuine issue of material fact as to the parties' intent, which is a legal defense to a request for summary eviction.

## CONCLUSION

We conclude that we review a district court order granting summary eviction based on the standard for review of an order granting summary judgment. We further conclude that summary eviction was not appropriate in this case because there is a legal defense based upon unresolved issues of material fact. Dragon must attempt to pursue restitution of the premises, if at all, under NRS 40.290 to 40.420. We have carefully analyzed the parties' other arguments and conclude that they lack merit. Accordingly, we reverse the order of the district court.[8]

DOUGLAS and CHERRY, JJ., concur.

[6]*Mullis v. Nevada National Bank*, 98 Nev. 510, 513, 654 P.2d 533, 535 (1982).

[7]*See, e.g., Paradise Orchards v. Fearing*, 94 P.3d 372, 377 (Wash. Ct. App. 2004).

[8]In light of this opinion, we vacate the stay imposed by our February 7, 2007, order.