199 P.3d 828 (2009)
The STATE of Nevada, by its Attorney General, Catherine Cortez MASTO, Petitioner,
v.
The SECOND JUDICIAL DISTRICT Court of the State of Nevada, in and for the COUNTY OF WASHOE, and the Honorable Brent T. Adams, District Judge, Respondents, and
Philip Morris USA; R.J. Reynolds Tobacco Company; Lorillard Tobacco Company; Anderson Tobacco Company LLC; Canary Island Cigar Company; Chancellor Tobacco Company UK Limited; Compania Industrial De Tabacos Monte Paz, S.A.; Daughters and Ryan, Inc.; Farmers Tobacco Company; General Tobacco; House of Prince a/s; International Tobacco Group (Las Vegas), Inc.; Japan Tobacco International USA, Inc.; King Maker Marketing, Inc.; Konci G & D Management; Kretek International; Liberty Brands, LLC; Liggett Group, Inc.; m/s Dhanraj International, Inc.; Pacific Stanford Manufacturing Corporation; Peter Stokkebye International a/s; PT Djarum; Santa Fe Natural Tobacco Company, Inc.; Sherman 1400 Broadway N.Y.C., Inc.; Top Tobacco, L.P.; Virginia Carolina Corporation, Inc.; Von Eicken Group; and Wind River Tobacco Company, LLC, Real Parties in Interest.
No. 49426.
Supreme Court of Nevada.
January 29, 2009.
*829 Catherine Cortez Masto, Attorney General, and Victoria Thimmesch Oldenburg, Senior Deputy Attorney General, Carson City, for Petitioner.
Bailey Kennedy and Dennis L. Kennedy, Las Vegas; Kirkland & Ellis and Stephen R. Patton, Chicago, IL, for Real Party in Interest R.J. Reynolds Tobacco.
Guild Russell Gallagher & Fuller and John K. Gallagher, Reno, for Real Parties in Interest Anderson Tobacco Company, Canary Island Cigar Company, Chancellor Tobacco Company UK, Compania Industrial de Tabacos Monte Paz, Daughters & Ryan, House of Prince, International Tobacco Group (Las Vegas), Japan Tobacco International USA, King Maker Marketing, Konci G & D Management, Kretek International, Liberty Brands, Liggett Group, M/S Dhanraj International, Pacific Stanford Manufacturing, Peter Stokkebye International, PT Djarum, Santa Fe Natural Tobacco Company, Sherman 1400 Broadway N.Y.C., Top Tobacco, Virginia Carolina Corporation, Von Eicken Group, and Wind River Tobacco Company.
Holland & Hart, LLP, and J. Stephen Peek, Reno, for Real Party in Interest Lorillard Tobacco Company.
McDonald Carano Wilson, LLP, and Thomas R.C. Wilson II, Reno, for Real Party in Interest Philip Morris USA.
Shea & Carlyon and Candace C. Carlyon and Shawn W. Miller, Las Vegas, for Real Parties in Interest General Tobacco and Farmers Tobacco Company.
BEFORE THE COURT EN BANC.[1]

OPINION
By the Court, CHERRY, J.:
In 1997, the State of Nevada instituted an action against four major tobacco companies stemming from allegations of wrongdoing in the manner that the tobacco companies marketed and advertised their products. The parties ultimately settled during the litigation when, in 1998, they entered into a Master Settlement Agreement (MSA). The MSA is a settlement agreement between tobacco manufacturers and 46 states,[2] including Nevada, which instituted similar actions against certain tobacco manufacturers.
Under the MSA, tobacco companies that were party to the settlement were required to make annual payments to states that were party to the settlement. The amount of the tobacco companies' annual payment to a state depended, in part, on whether the state enacted and "diligently enforced" a so-called qualifying statute. Under the MSA, a qualifying statute is one that requires tobacco manufacturers selling cigarettes in a state to either join the MSA or place funds into an escrow account to help cover any of the state's future tobacco-related liability. A state's failure to enact and diligently enforce a qualifying statute may substantially reduce *830 the annual payment it is otherwise entitled to receive under the MSA.
In April 2006, in response to allegations by certain tobacco companies that Nevada was not diligently enforcing its qualifying statute during 2003 and, thus, subject to a reduction in the annual payment amount that it received under the MSA, the State filed a complaint for an enforcement order or a declaratory order. Specifically, the State sought an enforcement order or declaration that Nevada had diligently enforced its qualifying statute during the 2003 calendar year.
In response, the tobacco companies moved the district court to compel arbitration to settle the matter. According to the tobacco companies, the clear terms of the MSA required the parties to arbitrate whether Nevada was diligently enforcing its qualifying statute. The district court ultimately granted the motion to compel arbitration. The State now petitions us for a writ of mandamus, directing the district court to vacate its order compelling arbitration and to consider the issues raised in the State's complaint on their merits.
In considering this petition, we determine whether Nevada state courts can resolve disputes arising under the MSA with respect to diligent enforcement of Nevada's qualifying statute or whether the MSA compels arbitration of such disputes. See generally NRS Chapter 370A and NRS 370A.140 (detailing that tobacco companies selling products in the State of Nevada must either become participating manufacturers under the MSA or must make deposits into a qualified escrow fund based on the number of units sold). In so doing, we first address the State's argument that the MSA's arbitration clause does not include such issues within its scope. We next address the State's corresponding contention that a separate provision of the MSA expressly requires that the parties submit such issues to state court.
We conclude that under the MSA's plain language, issues concerning the adjustment of Nevada's annual payment from the tobacco companies based on Nevada's enforcement of its qualifying statute must be arbitrated. Accordingly, we deny the State's petition.

FACTS
Nevada instituted an action against several major tobacco companies, real parties in interest R.J. Reynolds Tobacco Company, Philip Morris USA, and Lorillard Tobacco Company, in 1997.[3] On December 10, 1998, the parties settled the litigation and entered into a consent decree that was essentially a stopgap measure until the MSA was formalized and that enjoined tobacco companies from targeting youth within the State of Nevada with their promotions, marketing, or advertising. Subsequently, Nevada participated in the formation of, and ultimately joined, the MSA, a settlement agreement between the tobacco companies and other states that had already instituted similar litigation against those and other tobacco companies. Under the MSA, the tobacco companies that are party to it are divided into two groups: (1) Original Participating Manufacturers, and (2) Subsequent Participating Manufacturers. The Subsequent Participating Manufacturers, as their designation suggests, agreed to be bound by the MSA after the Original Participating Manufacturers and settling states already had formed the agreement.
The linchpin of the MSA is that the settling states agreed to release any future claims against participating tobacco companies, based on the health-care costs attributed to smoking, in exchange for the tobacco companies restricting the marketing of their products and making substantial annual payments to the settling states. With respect to each tobacco company's annual payment, under the MSA, the amount of each company's payment is determined on a nationwide basis by an independent auditor. To determine a tobacco company's annual payment, the independent auditor starts with a base payment amount set forth in the MSA, then makes adjustments to each company's annual payment as prescribed by the MSA. After the independent auditor determines each company's *831 annual payment, it allocates the payments among the settling states, as the MSA sets forth.

The NPM adjustment
One MSA adjustment applied by the independent auditor that generally reduces a tobacco company's annual payment is the "Non-Participating Manufacturer Adjustment" (NPM adjustment), which essentially reduces a tobacco company's annual payment amount if that company, as a result of its participation in the MSA, loses its share of the tobacco market to a tobacco company that is not bound by the MS A. Specifically, section IX(d)(1) of the MSA provides that an NPM adjustment shall apply if: (a) the settling tobacco companies collectively lose market share to tobacco companies not subject to the MSA's payment obligations and marketing and other restrictions, and (b) an economic consulting firm determines that the MSA was a significant factor contributing to that loss. Nonetheless, under the MSA, a state can avoid an NPM adjustment by enacting, and diligently enforcing, a qualifying statute imposing certain payment obligations on tobacco companies doing business in that state that are not parties to the MSA. A qualifying statute is a statute that requires all tobacco manufacturers selling cigarettes in a state to either join the MSA or place funds into an escrow account for the benefit of the state's future tobacco-related liabilities. Under the MSA, an NPM adjustment may be made when it is determined that a state fails to diligently enforce its qualifying statute.

MSA's arbitration provision
Additionally with respect to the independent auditor, under the MSA's terms, disputes regarding the independent auditor's decision must be arbitrated. Under section XI(c) of the MSA, "[a]ny dispute, controversy or claim arising out of or relating to" the independent auditor's calculations and determinations[4] "shall be submitted to binding arbitration" before a nationwide panel of three former federal judges.

Dispute over the original participating manufacturers' April 2006 payment obligations
The present dispute concerns the independent auditor's determination that a settling tobacco company experienced a nationwide market share loss for the 2003 calendar year. In March 2006, the independent auditor concluded that the MSA was a significant contributing factor to the loss and calculated the 2003 NPM adjustment to be approximately $1.2 billion. The tobacco companies thus requested that the independent auditor apply the 2003 NPM adjustment to their 2006 payments to Nevada, asserting that Nevada failed to diligently enforce its qualifying statute in 2003. The independent auditor refused to apply an NPM adjustment to the tobacco companies' 2006 annual payments to Nevada because the independent auditor contended that it was not within the scope of his power under the MSA to make such a legal determination. Thereafter, the tobacco companies withheld millions of dollars from their 2006 settlement payment to Nevada because of the independent auditor's determination that the MSA was a significant contributing factor to the market share loss in 2003, the subsequent calculation of the NPM adjustment, and their belief that Nevada failed to diligently enforce its qualifying statute.
In response, on April 20, 2006, the State filed a complaint for an enforcement order or a declaratory order under the MSA. In its cause of action, the State sought a declaration or enforcement order that Nevada had diligently enforced its qualifying statute during the 2003 calendar year, precluding the tobacco companies from applying the independent auditor's NPM adjustment to their 2006 payment.
The tobacco companies answered the State's complaint and filed a motion to compel arbitration and to dismiss the State's complaint or stay the litigation.
The State opposed the tobacco companies' motion to compel arbitration, asserting *832 among other arguments, that the MSA's arbitration clause did not extend to issues with regard to a state's enforcement of its qualifying statute. That is, the State argued that Nevada did not agree to arbitrate the diligent enforcement dispute.
The district court ultimately granted the motion to compel arbitration. In reaching its decision, the district court found that Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration. See Phillips v. Parker, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). The district court also found that the relevant arbitration clause was quite expansive. Thus, the parties were ordered to pursue arbitration pursuant to section XI(c) of the MSA.

DISCUSSION
The State now petitions this court for a writ of mandamus directing the district court to vacate its order granting the tobacco companies' motion to compel arbitration. The tobacco companies have filed an answer to the petition, as directed.
A writ of mandamus is available to compel the performance of an act that the law requires or to control a manifest abuse of discretion. See NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). Mandamus, moreover, is an extraordinary remedy, and the decision to entertain such a petition is addressed solely to our discretion. See Poulos v. District Court, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982). In general, a writ may issue only when petitioner has no plain, adequate, and speedy legal remedy, such as an appeal. NRS 34.170; see Pan v. Dist. Ct., 120 Nev. 222, 224, 88 P.3d 840, 841 (2004) (noting that an appeal is generally an adequate legal remedy precluding writ relief). Importantly, then, as the order challenged herea district court order compelling arbitrationis not an appealable order, and as we conclude that our consideration of this important issue is appropriate at this time, we exercise discretion to consider this writ petition. Clark County v. Empire Electric, Inc., 96 Nev. 18, 19, 604 P.2d 352, 353 (1980); NRS 38.247.

Whether the MSA compels arbitration by its plain language
Whether a dispute arising under a contract is arbitrable is a matter of contract interpretation, which is a question of law that we review de novo. Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990); Phillips v. Parker, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). In interpreting a contract, we construe a contract that is clear on its face from the written language, and it should be enforced as written. Canfora v. Coast Hotels & Casinos, Inc., 121 Nev. 771, 776, 121 P.3d 599, 603 (2005). A contract is ambiguous only when it is subject to more than one reasonable interpretation. Anvui, LLC v. G.L. Dragon, LLC, 123 Nev. 25, ___, 163 P.3d 405, 407 (2007). As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration. Phillips, 106 Nev. at 417, 794 P.2d at 718.
With regard to the arbitrability of disputes concerning the independent auditor's decisions, section XI(c) of the MSA provides the following:
Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carryforwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge.
Furthermore, subsection IX(j), referenced in that provision, details the order in which allocations, offsets, reductions, and adjustments, including the NPM adjustment and corresponding exception for a state's diligent enforcement of its qualifying statute, will apply. Subsection XI(i) details the remedy for miscalculated or disputed payments, including that failure to dispute the independent auditor's calculation is tantamount to agreement with the calculations.
*833 In its petition, the State argues that the issue of whether Nevada diligently enforced its qualifying statute as required to avoid an NPM adjustment under the MSA is not within the scope of the MSA's arbitration clause, and thus, the district court erred in granting the tobacco companies' motion to compel arbitration. According to the State, the MSA's arbitration clause is limited to review of calculations of the independent auditor, and the clause does not extend to the auditor's resolution of mixed questions of law and fact, such as the question of whether Nevada diligently enforced its qualifying statute.
The tobacco companies contend that the MSA's plain language does not limit arbitrable issues only to those of specific calculations made by the independent auditor because subsection IX(j), referenced in the arbitration clause, specifically includes the NPM adjustment and the diligent enforcement exemption. Moreover, the tobacco companies argue that the State has not overcome the well-settled presumption in favor of arbitration.
Here, section XI(c)'s language is plain with regard to whether it requires that a dispute over an independent auditor's decision concerning a state's enforcement of its qualifying statute be arbitrated. Indeed, the MSA's arbitration clause broadly provides that all disputes "arising out of or relating to" the independent auditor's determinations "shall be" submitted to arbitration.[5] Certainly, as the arbitration clause's reference to section IX(j) suggests, an independent auditor's decision regarding a state's enforcement of its qualifying statute relates to the independent auditor's determination whether to make an NPM adjustment to a tobacco company's annual payment amount and, if so, how much of an adjustment to make, as such a determination is fundamental to any NPM adjustment. And no language within the MSA's arbitration clause supports the State's contention that arbitration is limited to calculations by the independent auditor. Thus, under the arbitration clause's clear language, disputes regarding diligent enforcement are subject to arbitration because of the clause's broad language.
Moreover, this conclusion is supported by the vast majority of jurisdictions that have addressed this issue, and in so doing concluded that the "plain and unambiguous language of the MSA's arbitration provision requires arbitration of the parties' dispute concerning the NPM Adjustment, including the State's diligent enforcement defense." People v. Lorillard Tobacco Co., 372 Ill.App.3d 190, 310 Ill.Dec. 222, 865 N.E.2d 546, 554 (2007), appeal denied, 225 Ill.2d 657, 314 Ill.Dec. 832, 875 N.E.2d 1119 (2007): see also State v. Lorillard Tobacco Co., ___ So.2d ___, ___, 2008 WL 821054 at *5 (Ala.2008); State v. Philip Morris, Inc., 279 Conn. 785, 905 A.2d 42, 51 (2006); State, ex rel. Carter v. Philip Morris, 879 N.E.2d 1212, 1216 (Ind.Ct.App. 2008); Ieyoub v. Philip Morris, USA, Inc., 982 So.2d 296, 300 (La.Ct.App.2008), appeal denied, 992 So.2d 942 (La.2008); State v. Philip Morris Inc., 179 Md.App. 140, 944 A.2d 1167, 1182 (Ct.Spec.App.2008), cert. denied, 405 Md. 65, 949 A.2d 653 (2008); State ex rel., Bruning v. R.J. Reynolds, 275 Neb. 310, 746 N.W.2d 672, 680 (2008); State v. Philip Morris USA, Inc., 155 N.H. 598, 927 A.2d 503, 509 (2007); State ex rel. N.M. Attorney General v. American Tobacco Co., Inc., 145 N.M. 134, 194 P.3d 749, 754 (Ct. App.2008); State v. Philip Morris Inc., 30 A.D.3d 26, 813 N.Y.S.2d 71, 76 (2006), aff'd, 8 N.Y.3d 574, 838 N.Y.S.2d 460, 869 N.E.2d 636, 640 (2007); State v. Philip Morris USA, Inc., 666 S.E.2d 783, 792-93 (N.C.Ct.App. 2008); State v. Philip Morris, Inc., No. 06AP-1012, 2008 WL 2854536, at *10 (Ohio Ct.App., July 24, 2008); State v. Philip Morris USA Inc., 945 A.2d 887, 892 (Vt.2008).

Whether the MSA expressly excludes diligent enforcement disputes from the jurisdiction of state courts
Notwithstanding the arbitration clause's plain language, the State contends that a separate provision of the MSA requires that *834 state courts resolve issues regarding a state's enforcement of its qualifying statute. Specifically, the State argues that section VII of the MSA broadly allows the parties to submit disputes arising under the MSA to state courts. The tobacco companies contend, however, that while section VII of the MSA allows the parties to submit certain disputes to state courts, it expressly excludes from state courts disputes concerning a state's enforcement of its qualifying statute.
MSA section VII(a) provides that:
Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to each Settling State; and (3) except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O, shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State.
(Emphasis added.)
Contrary to the State's argument, MSA section VII's plain language precludes parties from submitting diligent enforcement disputes to state courts. Specifically, section VII broadly excludes the MSA's arbitration clause, section XI(c), from its scope. See also People v. Lorillard Tobacco Co., 310 Ill.Dec. 222, 865 N.E.2d at 552 (concluding that section VII excludes the MSA's arbitration clause from its scope, thus precluding the argument that the parties agreed to submit diligent enforcement disputes to state court.) Moreover, section VII also excludes section IX(d), which determines both the NPM adjustment and the subsidiary diligent enforcement determination from its scope. The MSA's requirement that diligent enforcement disputes be arbitrated makes sense, given the inherently national character of payment related disputes. See id. 310 Ill.Dec. 222, 865 N.E.2d at 554. Diligent enforcement is not an issue solely affecting an individual state; diligent enforcement disputes affect all of the settling states, as the amounts each state receives are dependent on the diligent enforcement of other states. Therefore, the MSA compels arbitration of diligent enforcement disputes and ensures that such disputes are not subject to state court jurisdiction under the plain language of the MSA.

CONCLUSION
We conclude that the plain language of the MSA's arbitration provision specifically includes within its scope disputes concerning a state's diligent enforcement of its qualifying statute. The MSA's arbitration clause clearly pertains to disputes "relat[ed] to" the independent auditor's calculation of a tobacco company's annual payment under the settlement agreement. As the auditor's annual payment calculation takes into account whether a state has diligently enforced its qualifying statute, under the MSA's clear language, the determination whether a state has diligently enforced its qualifying statute is undoubtedly a determination "relating to" the auditor's calculation.
Further, the State's contention, that the MSA's provision outlining the issues that the parties agreed to submit to state courts includes disputes regarding a state's enforcement of its qualifying statute, is without merit. That provision clearly excludes from its scope the disputes covered by the MSA's arbitration clause and, as discussed, the MSA's arbitration clause plainly includes disputes pertaining to a state's diligent enforcement of its qualifying statute.
Accordingly, the district court's decision to compel the parties to arbitrate the dispute in this case is not a manifest abuse of its discretion, and thus, we deny the State's petition.
We concur: HARDESTY, C.J., and PARRAGUIRRE, DOUGLAS, SAITTA, and GIBBONS, JJ.
NOTES
[1] The Honorable Kristina Pickering, Justice, did not participate in the decision of this matter.
[2] The District of Columbia, American Samoa, the Northern Mariana Islands, Guam, the United States Virgin Islands, and Puerto Rico are also parties to the MSA.
[3] The original suit was also brought against Brown & Williamson, which has since merged with R.J. Reynolds Tobacco Company.
[4] Specifically the MSA provides that settling states arbitrate "any dispute concerning the operation or application of any of the adjustments" made by the independent auditor, including the "diligent enforcement" exemption. See MSA § XI(c).
[5] We are persuaded by the United States Court of Appeals for the Eighth Circuit's decision in Fleet Tire Serv. v. Oliver Rubber, 118 F.3d 619, 621 (8th Cir.1997), in which the court held that an arbitration clause containing the phrase "relating to" "constitute[d] the broadest language the parties could reasonably use to subject their disputes to [arbitration]."