An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

VEGAS SOUTH PARTNERS, LLC, A
DELAWARE LIMITED LIABILITY
COMPANY,
Appellant,
vs.
MANDALAY PLACE, A NEVADA
CORPORATION; AND MANDALAY
CORPORATION; D/B/A MANDALAY
BAY/HOTEL SERVICES,
Respondents.

No. 62427

**FILED**

JAN 30 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting summary judgment in a real property contract action. Eighth Judicial District Court, Clark County; Susan Scann, Judge.

The underlying cases arose from two lease transactions occurring in 2009, in which appellant Vegas South Partners, LLC leased separate spaces from respondents Mandalay Place and Mandalay Corporation (collectively, "Mandalay"). The parties entered into a lease for Vegas South to operate a burlesque lounge, the Rose Lease, and another lease for Vegas South to operate a poolside food and beverage venue. Mandalay leased the spaces to Vegas South partly based on its owners' success in opening the Privé nightclub. The leases required Vegas South to pay rent, obtain liquor licenses, and employ Vegas South's owners on a full-time basis to personally operate and manage the premises. The leases also prohibited any unauthorized transfer of ownership interest in Vegas South. Shortly after the leases were executed it became public knowledge that Vegas South's owners were the subject of an investigation into Privé

15-03301

by the Nevada Gaming Commission. Based on this investigation, Vegas South withdrew its liquor license applications and sought to change ownership. A dispute arose between the parties over whether Vegas South had breached the leases, which resulted in Vegas South ceasing operation of the poolside food and beverage venue and a delay in the opening of the burlesque lounge.

Vegas South commenced the underlying district court actions seeking, among other things, to prevent Mandalay from terminating the burlesque lounge lease and to recover damages from Mandalay resulting from the closure of the poolside food and beverage venue.[1] The district court ultimately granted summary judgment in favor of Mandalay and against Vegas South for breach of the leases. Vegas South appealed. For the following reasons, we affirm.

*Standard of Review*

This court reviews a district court's order granting summary judgment de novo. *Francis v. Wynn Las Vegas*, 127 Nev. ___, ___, 262 P.3d 705, 714 (2011). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56(c). "[W]hen reviewing a motion for summary judgment, the evidence, and any reasonable inferences drawn from it,

---

[1]Vegas South sought damages from Mandalay under the theory of unjust enrichment. Vegas South claimed that Mandalay appreciated, accepted, and retained its estimated $450,000 in improvements to the poolside food and beverage venue, which created an implied contact. Accordingly, Vegas South argued, it would be inequitable for Mandalay to retain the benefit of the improvements without payment for their value.

must be viewed in a light most favorable to the nonmoving party." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

Under Nevada law, a contract must be read as a whole, giving meaning to all provisions. *Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004). Moreover, this court "construe[s] a contract that is clear on its face from the written language," and will enforce the contract as written. *State ex rel. Masto v. Second Judicial Dist. Court*, 125 Nev. 37, 44, 199 P.3d 828, 832 (2009). Construction of a contract term is a question of law that this court reviews de novo. *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007).

*Breach for failing to obtain a liquor license*

Vegas South argues that the district court erroneously concluded that it breached the liquor license provision of the Rose Lease. It argues that any delay in the issuance of the liquor license resulted from Mandalay's insistence that the parties amend the lease. Neither its citations nor the record, however, supports this position. Vegas South withdrew its application voluntarily, likely because it knew that its principals would not be awarded a license in light of the Privé investigation. Further, the principals never submitted a subsequent application. Vegas South cites to Clark County Code of Ordinances § 8.20.030 for the proposition that it needed to withdraw its application to provide a valid, current lease. However, this provision of the Code does not require that the application be withdrawn, prohibit supplementation of the application with the updated lease, or prohibit changes to the application. Clark Cnty. Code of Ordinances § 8.20.030. More importantly, Vegas South's argument fails because the Rose Lease was

still valid, therefore complying with § 8.20.030. Vegas South had no reason to withdraw the application based on the still-valid lease.

Because Vegas South withdrew its application without justification, we conclude that it defaulted on the lease. The Rose Lease required that Vegas South immediately apply for a liquor license and provided that if Vegas South was "unable to obtain a liquor license or has its liquor license suspended, limited or revoked, such failure will constitute an event of default and result in the immediate termination of this Lease." While there was no deadline set for obtaining the liquor license, time was clearly of the essence where the lease required an "immediate" application for the license. Moreover, even if time was not of the essence, Vegas South could not have performed within a reasonable time without an application pending. *Mayfield v. Koroghli*, 124 Nev. 343, 349, 184 P.3d 362, 366 (2008) ("If time is not of the essence, the parties generally must perform under the contract within a reasonable time, which depends upon the nature of the contract and the particular circumstances involved." (footnote and internal quotation omitted)). We therefore conclude that Vegas South breached this material provision in the contract. *See Covington Bros. v. Valley Plastering, Inc.*, 93 Nev. 355, 360, 566 P.2d 814, 817 (1977) (stating that anticipatory repudiation of a contract occurs when one party's nonperformance is "clear, positive, and unequivocal . . . in light of the total factual context of the individual case." (citation omitted)); *Finnell v. Bromberg*, 79 Nev. 211, 225, 381 P.2d 221, 228 (1963) ("'Where a party bound by an executory contract repudiates his obligation *before the time for performance*, the promisee. . . [may] treat the contract as ended . . . [and] maintain an action at once for the damages

occasioned by such anticipatory breach.'" (emphasis added) (quoting 17 C.J.S. *Contracts* § 472, at p. 973)).

*Breach for failure to pay rent*

Vegas South argues that their failure to pay rent did not constitute a breach of the Rose Lease because Mandalay's general counsel, William Martin, verbally informed Vegas South that Mandalay did not expect rent until the parties finalized the Third Amendment to the lease. We conclude that Vegas South breached the Rose Lease by failing to pay rent because Mandalay did not waive or modify the rental terms, as specified in section 27.13(b) of the Rose Lease. In order to effectuate a modification or waiver of contract terms, section 27.13(b) provides that "[n]o term . . . required to be performed . . . shall be waived, altered or modified *except by a written instrument* executed by the other party." (Emphasis added.) Under the lease, Mandalay needed to provide a rental modification or waiver in writing; Martin's verbal statements do not represent an adequate waiver or modification of the Rose Lease. Further, any alterations to the Rose Lease terms must have been executed by the other party. Accordingly, no modification or waiver of the terms of the Rose Lease could take effect. Because Vegas South did not provide evidence of a waiver or modification that satisfies the procedure outlined in Section 27.12(b) of the Rose Lease, their argument fails.

Vegas South also argues that Mandalay cannot recover any rent accrued after termination of the Rose Lease in December 2009, as Mandalay did not make an effort to attract replacement tenants. It argues that Mandalay had a duty to mitigate damages after termination of the Lease and can therefore only recover rent accrued prior to the termination of the Rose Lease in December 2009. Regardless of section

24.2(b)'s terms regarding Vegas South's rent liability after termination of the Rose Lease, Mandalay only sought past due rent accrued before the Lease termination in December 2009. Neither party disputes the rental amounts before the termination of the Lease or that they are still owed. Accordingly, Vegas South's claim that Mandalay failed to mitigate damages after December 2009 is irrelevant, and their argument fails.

We have considered Vegas South's remaining issues on appeal and concluded that they are without merit.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:  Hon. Susan Scann, District Judge
     Stephen E. Haberfeld, Settlement Judge
     Kolesar & Leatham, Chtd.
     Pisanelli Bice, PLLC
     Eighth District Court Clerk