# IN THE SUPREME COURT OF THE STATE OF NEVADA

WESTGATE PLANET HOLLYWOOD LAS VEGAS, LLC; WESTGATE RESORTS, LTD.; LIBERTY MUTUAL INSURANCE COMPANY; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; AND WESTCHESTER FIRE INSURANCE COMPANY,
Appellants/Cross-Respondents,
vs.
TUTOR-SALIBA CORPORATION; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,
Respondents/Cross-Appellants.

No. 65130

**FILED**

MAY 05 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART, VACATING IN PART, AND REMANDING

This is an appeal and a cross-appeal from a district court judgment after a bench trial in a mechanics' lien and construction contract action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

### I.

Appellant Westgate Planet Hollywood Las Vegas, LLC (Westgate), contracted with respondent Tutor-Saliba Corporation (Tutor) to construct the Planet Hollywood Towers by Westgate in Las Vegas. Tutor hired various subcontractors, including Conti Electric. As the project was nearing completion, Westgate stopped paying Tutor. Tutor

17-14941

recorded a mechanics' lien and sued Westgate and Westgate's parent company, appellant Westgate Resorts, Ltd. (Resorts), seeking to foreclose its mechanics' lien. Westgate counterclaimed, alleging various offsets and construction defects. Conti Electric intervened, suing Tutor and Westgate.

Issues concerning Westgate's Owner Controlled Insurance Program (OCIP) were bifurcated, several other issues were decided on summary judgment, and the remaining issues proceeded to a bench trial. On the eve of trial, Conti Electric settled with Westgate and Tutor, leaving only the claims of Westgate and Tutor pending against each other and their insurers. After the bench trial, the district court found in favor of Tutor for $8,845,420, plus $10,030,493 in prejudgment interest, attorney fees, and costs, and in favor of Westgate on certain construction-defect counterclaims for $2,584,487, plus $515,231.64 in prejudgment interest. The OCIP issues were decided on summary judgment, with the district court finding in favor of Tutor and against both Westgate and Resorts for $649,568, plus $152,250 in prejudgment interest and attorney fees. The district court also awarded post-judgment interest on all unpaid amounts. Westgate, Resorts, and their insurers appealed, and Tutor cross-appealed.

## II.

We review the summary judgment portions of this appeal "de novo, without deference to the findings of the lower court. Summary judgment is appropriate . . . when the pleadings and other evidence on file demonstrate that no genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (quotation marks and footnotes omitted). As to the portions of this appeal resolved

by bench trial, the district court's contract interpretations are generally reviewed de novo, while the district court's findings of fact are upheld if supported by substantial evidence. *Mason-McDuffie Real Estate, Inc. v. Villa Fiore Dev., LLC*, 130 Nev., Adv. Op. 83, 335 P.3d 211, 213 (2014); *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215-16, 163 P.3d 405, 407 (2007). The district court's award of attorney fees, costs, and interest is reviewed for an abuse of discretion, except where the attorney fees, costs, or interest implicate a question of law, in which case de novo review applies. *Davis v. Beling*, 128 Nev. 301, 321, 278 P.3d 501, 515 (2012); *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 916, 193 P.3d 536, 546 (2008).

## III.

## A.

Westgate argues that it was erroneously denied the right to a jury trial. The right to a jury trial is waived if a jury demand is not made before entry of the first order setting the case for trial. NRCP 38(b), (d). In this case, Westgate filed its demand for a jury trial almost two years after the initial order setting the case for trial. While later trial-setting orders referenced a jury trial and the parties discussed a jury trial at certain hearings, this does not ameliorate Westgate's waiver of its right to a jury trial. NRCP 38(d). Although the district court may grant a jury trial despite the waiver, NRCP 39(b), its refusal to do so here was not an abuse of discretion. *See Walton v. Eighth Judicial Dist. Court*, 94 Nev. 690, 693-96, 586 P.2d 309, 311-12 (1978) (discussing the right to a jury trial and its waiver); *Hardy v. First Nat'l Bank of Nev.*, 86 Nev. 921, 922-23, 478 P.2d 581, 582 (1970) (holding that the right to a jury trial was

waived, despite an untimely demand one year late). Accordingly, Westgate waived its right to a jury trial, and this issue does not warrant reversal.

B.

Westgate next challenges the district court's summary judgment orders regarding the OCIP. Resorts initially established the OCIP, which provided insurance for portions of the project. After establishing the OCIP, Resorts and/or Westgate allowed the upper $75 million of the $100 million 10-year tail coverage to lapse mid-litigation, on December 31, 2011. Westgate gave notice of cancellation on February 13, 2012. Tutor paid for replacement coverage on March 14, 2013, and notified Westgate and Resorts. Resorts reimbursed Tutor $649,568 for the replacement coverage within 30 days on April 12, 2013.

Tutor amended its compliant to assert breach of contract claims concerning the lapse in OCIP coverage against both Resorts and Westgate. After a series of cross-motions for summary judgment, the district court first granted summary judgment to Tutor on liability and then granted summary judgment to Tutor on damages, treating Tutor's expense for the replacement coverage as damages and Resorts' $649,568 payment as an offset to damages.

On appeal, Westgate argues, among other things, that the OCIP summary judgments were granted in error because Tutor lacks damages as Resorts timely reimbursed Tutor within 30 days after Tutor paid for replacement coverage under sections 7.2.4 and 7.6.1 of the prime contract. Thus, Westgate argues, the payment does not constitute contractual damages available to Tutor. We agree. Because Resorts

timely reimbursed Tutor for the replacement coverage within 30 days, as permitted by section 12.1.3 of the prime contract, Tutor's payment for replacement coverage does not constitute contractual damages.

As a result, the only damages that Tutor alleges for the lapse in OCIP coverage are potential future damages resulting from the coverage gap, and, as the district court observed, "Westgate's liability to indemnify Tutor-Saliba on potential future claims as a result of the coverage gap . . . is not ripe." We agree with the district court and conclude that all issues concerning Westgate's OCIP liability and Tutor's resulting damages are not yet ripe. *See Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 887, 141 P.3d 1224, 1231 (2006) (explaining that a claim is not ripe when the alleged harm is speculative or hypothetical). Therefore, we decline to consider the remaining OCIP-related issues, and we reverse the district court's summary judgments on OCIP liability and damages on this ground, without prejudice to Tutor pursuing its claims if damages are realized. In light of this conclusion, we also reverse the portion of the district court's order and judgment awarding prejudgment interest on the OCIP damages. We affirm the district court's order and judgment awarding costs to Tutor, including OCIP-related costs, however, because Tutor is still the prevailing party when considering the litigation as a whole. Finally, without expressing any opinion on the matter, we vacate the portion of the district court's order and judgment awarding OCIP-related attorney fees and remand this matter to the district court for reconsideration of whether, in light of this order, Tutor should be awarded attorney fees for the OCIP portion of the litigation, and if so, in what amount.

## C.

Westgate also challenges Tutor's categorization of work performed by sub-contracted laborers as "self-performed" work. Section 5.1.3 of the prime contract provided:

> For work that is self-performed by [Tutor], [Tutor] shall perform such work at cost plus an additional ten percent (10%) which will be included in the Cost of the Work and subject to the additional six (6%) percent General Contractor's Fee.

Among the work that Tutor classified as "self-performed" was $786,246 of work performed by laborers who were not employed by Tutor, but who were employed by a third party that contracted with Tutor and who were supervised by Tutor personnel. Westgate argues that this was not work that Tutor self-performed. We agree.

We interpret contract terms de novo. *Am. First Fed. Credit Union v. Soro*, 131 Nev., Adv. Op. 73, 359 P.3d 105, 106 (2015). Where the contract language is clear and unambiguous, it will be enforced as written. *Id.* We generally assign common or normal meanings to words in a contract, but nothing prohibits two parties to a contract from agreeing to define contract terms in a specific manner. *Id.* at 108; *Tompkins v. Buttrum Constr. Co. of Nev.*, 99 Nev. 142, 144, 659 P.2d 865, 866 (1983) (stating that, in general, words in a contract are "given their plain, ordinary and popular meaning"); Restatement Second of Contracts § 202(3)(a) (1981).

Here, the parties did not define the term "self-performed" in the prime contract. The dictionary definition of "self-" is "by oneself or itself." Merriam-Webster's Collegiate Dictionary 1126 (11th ed. 2012), and

SUPREME COURT
OF
NEVADA

(O) 1947A

thus, the term "self-performed" describes work that was performed by Tutor's personnel. While the parties could have agreed to a different definition of "self-performed" that included hired laborers, nothing in section 5.1.3 or the rest of the contract suggests that the parties intended to deviate from the dictionary definition of "self-" or from the general purpose of the contract; that is, Tutor was the general contractor and would subcontract for work that it did not perform with its own personnel. For example, section 10.1 of the prime contract provides that "[t]hose portions of the Work that the Contractor does not customarily perform with the Contractor's *own personnel* shall be performed under subcontracts or by other appropriate agreements with the Contractor." (Emphasis added.) Accordingly, we conclude that the term "self-performed" is clear and unambiguous in this contract and that its plain meaning should apply. Therefore, under section 5.1.3, Tutor was entitled to the ten-percent self-performance bonus for work performed only by *its* own personnel, not for work performed by personnel provided by other vendors with whom Tutor contracted to provide labor.

The district court permitted Tutor to classify $786,246 of charges from other vendors as Tutor's self-performed work. We reverse this portion of the judgment; therefore, Tutor is not entitled to the ten-percent self-performed work fee on this amount, totaling $78,625, nor the six-percent contractor's fee on the ten-percent fee, totaling $4,717. *See* § 5.1.3 (stating that the ten-percent self-performed fee "will be included in the Cost of the Work and subject to the additional six (6%) percent General Contractor's Fee"). Accordingly, the district court shall subtract $83,342 from Tutor's judgment.

## D.

Finally, Westgate challenges the district court's awards of pre- and post-judgment interest. After the bench trial, the district court awarded Tutor $8,845,420 on its claims and awarded Westgate $2,584,487 on its counterclaims. But the district court did not offset Westgate's counterclaim damages against Tutor's damages award. Both parties moved for prejudgment interest, attorney fees, costs, and post-judgment interest. The district court awarded Tutor prejudgment interest under section 14.2 of the prime contract, which states, in relevant part:

> Payments due and unpaid under the Contract shall bear interest from the date payment is due at . . . Eight percent (8%) per annum.

The parties may specify in a contract the interest rate and terms to be applied. *See* Restatement (Second) of Contracts § 354, cmt. a (1981); 25 Williston on Contracts § 66:109 (4th ed. 2002). In this case, while the parties specified the interest rate and that interest began to run "from the date the payment is due," they did not otherwise specify how to calculate interest. To supply the absent terms, we turn to our case law interpreting statutes with similar terms. *See Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 379-80, 283 P.3d 250, 256 (2012) (noting that, in certain circumstances, case law or the common law may be used as a gap-filler to supply absent terms in a contract). When awarding prejudgment interest, the district court must determine "(1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied." *Paradise Homes, Inc. v. Cent. Sur. & Ins. Corp.*, 84 Nev. 109, 116, 437 P.2d 78, 83 (1968) (interpreting NRS 99.040(1), which contains a "from the time it becomes

 

due" clause, similar to the parties' contract). On appeal, the parties do not dispute that the contract provides for an eight percent interest rate, but they do dispute the remaining two determinations.

Starting with the third determination, Westgate argues that the district court improperly refused to offset its judgment on its counterclaims for construction defects from Tutor's award before calculating prejudgment interest, leading to an inflated amount that Tutor could recover against the mechanics' lien bonds and a windfall from inflated interest. While section 14.2 does not specify whether offsets are to be considered when awarding interest, this court has previously held that "[p]re-judgment interest shall be allowed on the amount of the debt or money value so determined, after making all the deductions to which the defendant may be entitled." *Paradise Homes*, 84 Nev. at 116-17, 437 P.2d at 83; *see also Close v. Isbell Constr. Co.*, 86 Nev. 524, 528-29, 471 P.2d 257, 260 (1970) (approving an offset for improper performance and delays under a construction contract). We have not expressly examined when offsets are warranted; however, the consensus of other courts is that when the proposed offset "is regarded as constituting either a reduction of the amount due the [prevailing party] or a payment to him," which would reduce the amount of money of which the prevailing party was deprived, then an offset must be made before calculating prejudgment interest. *Mall Tool Co. v. Far W. Equip. Co.*, 273 P.2d 652, 663 (Wash. 1954). This approach is consistent with our previous application of prejudgment interest offsets and is generally applied in the context of construction defect counterclaims in a contractor's breach of contract suit. *See, e.g., Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 603 P.2d 513, 537

SUPREME COURT
OF
NEVADA

(O) 1947A

9

(Ariz. Ct. App. 1979) (holding that if the construction defect counterclaims "are attributable to the same [construction] contracts which are the basis of the primary . . . claims, those claims and the . . . counterclaims are offset and prejudgment interest is allowed only on the net difference"); *York Plumbing & Heating Co. v. Groussman Inv. Co.*, 443 P.2d 986, 988 (Colo. 1968) (same); *Hollon v. McComb*, 636 P.2d 513, 517 (Wyo. 1981) (same).

Having considered these authorities, we conclude that this approach should be followed in this case. Therefore, because Westgate's damages award on its counterclaims for construction defects arose from Tutor's performance of the contract and amount to a reduction in the amount due Tutor, the district court erred in refusing to apply an offset. Westgate is entitled to have its damages offset from Tutor's damages award, before the district court's calculation of Tutor's prejudgment interest. Therefore, we vacate the district court's pre- and post-judgment interest orders and remand this matter for further proceedings on pre- and post-judgment interest, taking into consideration Westgate's entitlement to an offset.[1]

---

[1]Because we vacate and remand the district court's interest determinations on this ground, we decline to consider the parties' contentions concerning the district court's calculation of the dates on which prejudgment interest began to run, without prejudice to any future challenge.

## IV.

In summary, we reverse the district court's summary judgments in favor of Tutor on the OCIP issues, because Westgate reimbursed Tutor for the insurance premiums and the remaining issues are not yet ripe. We also reverse the district court's order and judgment awarding Tutor $3,986 in interest on the OCIP damages, vacate the district court's order and judgment awarding Tutor $148,264 in attorney fees for the OCIP portion of this litigation, and remand the attorney fee issue to the district court for reconsideration of whether Tutor is entitled to an award of attorney fees covering the OCIP portion of this litigation in light of this order.

We also reverse the district court's judgment to the extent that it awarded Tutor damages for the ten-percent self-performed work fee concerning work done by vendors hired by Tutor. This reduces Tutor's judgment by $83,342. We vacate the district court's order and judgment awarding pre- and post-judgment interest and remand this matter for further proceedings on those issues. Thus, on remand, the district court shall modify the judgment in accordance with this order, offset Westgate's damages against Tutor's damages, and then recalculate pre- and post-judgment interest.

We have considered the parties' remaining contentions on appeal and cross-appeal and affirm all other aspects of the district court's orders and judgment, including those not addressed in this order. Because we remand this matter only for reconsideration of attorney fees related to the OCIP issue and for a recalculation of damages and interest, we decline



to direct the Eighth Judicial District Court to assign this matter to a new district judge. Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART, REVERSED IN PART AND VACATED IN PART, AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Elizabeth Goff Gonzalez, District Judge
Ara H. Shirinian, Settlement Judge
Watt, Tieder, Hoffar & Fitzgerald, LLP
Gordon & Rees, LLP
McDonald Carano Wilson LLP/Las Vegas
Bremer Whyte Brown & O'Meara, LLP
Castle & Associates
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A